Cross et al. v. Riggins.

———————•———————

ASA B. CROSS AND GEORGE W. RIPPEY, Defendants in Error, *v.* BENJAMIN L. RIGGINS, Plaintiff in Error.

1. *Attorney and client, communications between — Construction of statute.*— The rule which excludes testimony of professional communications between attorneys and clients is broad enough to embrace a case where the one seeking counsel pays no fee and employs other attorneys in the prosecution of the business, and even where the lawyer consulted is afterwards employed on the other side.

    The term "client," as used in the statute (Wagn. Stat. 1874, § 8), should be understood in its most enlarged sense, and the prohibtion should close the mouths of all who have listened to disclosures looking to professional aid.

*Error to Kansas City Court of Common Pleas.*

*Gage & Ladd,* for plaintiff in error.

The court erred in excluding the testimony of William Douglas. The conversation was not a confidential communication. The relation of attorney and client never existed between plaintiffs and witness, and the rule of privileged communication as between attorney and client is strictly confined to cases in which the relation exists and to the time during which that relation continues. No statements made prior or subsequent to the relation are privileged, but only those made within the relation. A conversation with a view to the employment of an attorney is not an employment. (Foster v. Hall, 12 Pick. 89; Yordan v. Hess, 13 Johns. 492; Cobden v. Kendrick, 4 T. R. 432.)

*Wm. E. Sheffield,* for defendants in error.

The testimony of Douglas was inadmissible. (Foster v. Hall, 12 Pick. 89, and cases cited; Greenough v. Gaskell, 1 Mylne & K.

102, 103, per Lord Brougham ; Parker v. Carter, 4 Munf., Va., 273 ; 1 Graham's Pr. 212 ; Betzhoover v. Blackstock, 3 Watts, 20 ; Cowan & Hill's notes to Phil. Ev., 3d ed., note 139, 162 ; 2 Stark. Ev. 319 *et seq.* ; 1 Greenl. Ev., § 237–8, notes ; Johnson v. Sullivan, 23 Mo. 474 ; Hull v. Lyon, 27 Mo. 570 ; The Bank of Utica v. Merserau, 3 Barb. Ch. 595 *et seq.* ; Williams v. Fitch, 18 N. Y. 546.)

BLISS, Judge, delivered the opinion of the court.

Plaintiffs were lumber dealers in Kansas City, and count upon a bill of lumber sold defendant for building a house. That the lumber was furnished is not denied, but defendant claims that it was furnished his contractor. Upon the trial, Mr. Douglas, of the firm of Douglas & Gage, attorneys, testified : "Some time in 1866, A. B. Cross approached me on the street and stated the facts about this case and asked my opinion, and I told him I could not give my opinion without looking at the statute touching mechanics' liens." Cross testified that he stated his case to Mr. Gage and intended to employ him ; had employed him before, but he went away ; that he stated the case to Mr. Douglas and asked his opinion, but he manifested so much indifference that he did not go back to him. Mr. Douglas was offered as a witness as to the declarations of Cross to him, but the objection was raised that they were confidential communications made to him in a professional character and could not be disclosed, and the objection was sustained.

Among the persons disqualified to testify, the statute (Wagn. Stat. 1374, § 8) enumerates " an attorney, concerning any communication made to him by his client in that relation, or his advice thereon, without the consent of that client." In Hull v. Lyon, 27 Mo. 570, where two adverse parties counseled with an attorney and made disclosures to him, he was not permitted to give in evidence the declarations of either, although they were not private, but made to the other party as well. In Johnson v. Sullivan, 23 Mo. 474, testimony as to declarations to an attorney was forbidden, although judicial proceedings were not commenced or contemplated. I cite these cases to show that our statute is held to

embody the stricter rule of the common law upon this subject — a rule that excludes from the forum evidence of all declarations made to counsel in order to solicit professional advice, without regard to the institution or defense of a suit.

The present record presents the question whether one who seeks counsel, but who in fact pays no fee, and employs others in the prosecution of the business — the counsel consulted being afterwards employed against him — can be so considered as a client that his communications are privileged. I know not where to draw a distinction. The rule should be universal, and apply to all who communicate facts, expecting professional advice, or it will fail to answer its ends. Its limitations may be unknown to laymen, and without feeling perfect freedom in all cases, instead of the perfect confidence that should exist, the intercourse might be restrained by fear and marred by dissimulation on the part of the client, and the object of the rule be defeated; and besides, a door would be opened to fraud. One might seek advice, expecting not only to pay but to retain in an anticipated litigation, and, after his story had been heard, the retainer might be declined and the information be used against him; also an obstacle would be thrown in the way of the settlement of disputes. The noblest office of the lawyer is to heal difficulties, and far more is done in that direction in the higher walks of the profession than is known to the public. In seeking this end counsel may receive communications from the opposite party, and not made under circumstances that would exclude them as propositions to compromise. The conventionalities that hedge in the English counsellor are unknown in this country, and public policy requires that persons should feel that they may securely say anything to members of the profession in seeking aid in their difficulties, although the person whose advice they seek may have been employed, or may be afterwards employed, against him. The term "client," then, in the statute, should be used in its most enlarged sense, and the prohibition should close the mouths of all who have listened to disclosures looking to professional aid.

The petition charges the defendant as purchaser, and the answer denies such purchase. After the evidence was in, the defendant

claimed that it showed a guarantee rather than a purchase, and asked for instructions that certain facts would make the defendant a guarantor, and as such he could not be charged in the action. It would have been well enough to have given these instruction, as the defendant had a right to claim that the evidence proved facts that would only make the contract one of guaranty. But this was no error for which we should reverse the judgment, and principally because the instructions refused are negatively implied in those given. The jury were told that in order to give plaintiff a verdict they must find certain facts, which must exist to constitute an original undertaking that would be inconsistent with the relation of guarantor. If they found these facts to be true, defendant of course could not hold the latter relation; and if they did not find them to be true, they must find for defendant, and it practically would not matter to him upon what theory he should obtain a verdict.

The instructions given are sharply criticised, but I fail to find the errors so apparent to counsel. It is one of those cases where good men may differ upon the facts. The plaintiffs have obtained two verdicts, and the interests of justice do not demand another trial.

The other judges concurring, the judgment will be affirmed.