C. Aultman & Co. v. Daggs.

C. AULTMAN & Co., Appellants, v. AZRO J. DAGGS AND
ROBERT E. DAGGS, Respondents.

St. Louis Court of Appeals, May 20, 1892.

1. **Practice, Appellate:** WHEN MOTION FOR A NEW TRIAL IS NOT REQUISITE. The decision of the trial court upon a motion, which results in a final determination of the matter in controversy without a trial on the merits, will be reviewed on appeal to this court, although there was no motion for a new trial.

2. **Sales:** REMEDY OF SELLER FOR BREACH OF CONTRACT FOR PAYMENT BY NOTE. When a contract for the sale of goods provides for payment by the purchaser by a note payable at a future day, and the purchaser, after delivery of the goods to him, refuses to comply with the contract by giving such note, the seller can sue immediately as for a breach of the contract, and the amount of the note is in such case, *prima facie*, the measure of his damages.

3. **Attachments:** PLEADINGS. The nature of the action in an attachment suit in a court of record must be determined from the allegations of the petition; and the determination thereof will not be affected by a statement in the affidavit for attachment, which is inconsistent with the allegations of the petition.

4. ——: SPECIAL APPEAL. A special appeal by the plaintiff in an attachment suit from an adverse judgment on the plea in abatement was permissible under sections 562 and 2250 of the Revised Statutes of 1889, while the former section was in force.

5. **Construction of Statutes.** *Held, arguendo,* that it is the duty of a court to construe a statute as written, without regard to the results of such construction, or the wisdom of the law as thus construed.

6. **Attachments:** NON-PAYMENT OF PURCHASE PRICE OF GOODS. In order to establish the ground for attachment that the defendant has failed to pay the price or value of an article delivered, which, by contract, he was bound to pay upon delivery, it is not necessary that such price or value should be payable in money; the statute is applicable where, as is held to have been the case herein, there is an agreement between the parties that the purchaser should give to the seller a note and chattel mortgage upon the delivery of the article and as payment therefor.

7.  Attorney and Client: PRIVILEGED COMMUNICATIONS. In order
    to render a communication privileged on the ground that it was made
    to an attorney by his client, that relation must exist as to the subject-
    matter of the communication. And *held*, that this relation was not
    established in this cause, wherein a mortgagor made a communication
    in reference to his purpose in making the mortgage to the notary who
    took his acknowledgment thereto, but who had no other connection
    with that transaction, although he had previously acted as attorney
    for the mortgagor with respect to other matters.

*Appeal from the Marion County Circuit Court.*—HON.
THOMAS H. BACON, Judge.

REVERSED AND REMANDED.

*F. W. Babcock* and *J. W. Boulware,* for appellants.

*Mudd & Wagner* and *H. J. Drummond,* for respond-
ents.

BIGGS, J.—This is a suit by attachment. It was
instituted in the circuit court of Scotland county, and
was transferred by change of venue to the circuit court
of Marion county, where it was finally determined in
favor of the defendants. As there is some controversy
as to the nature of the action, it will be necessary to set
out the petition, the affidavit for the attachment and
the written contract, which is made the foundation of
the action. Omitting the caption the petition reads:
" That, on the tenth day of November, 1888, plaintiff
contracted and sold to the defendants on their special
instance and request, and defendants contracted for and
purchased of it, one number 12 Phœnix engine on
trucks, twelve-horse-power, with self-guide traction
attachment; also one single E sawmill and fixtures and
extras usually furnished with said engine by it, with
fifty-two-inch saw complete, at the agreed price and
sum of $1,850, to be paid for on delivery, by defendants
executing to it their three promissory notes, bearing

date of delivery, one for $650, payable January 1, 1890; one for $650, payable January 1, 1891, and one for $550, payable January 1, 1892, each bearing eight-per-cent. interest; to be secured by first mortgage on afore-said property, which contract of purchase, and so to pay for said engine, said mill and fixtures, is in writing and herewith filed.

"Plaintiff further states that, on the —— day of ——, defendants took and obtained possession of said aforesaid engine and sawmill and fixtures, and yet hold and enjoy possession thereof, and though so having, holding and enjoying such possession and property, and though by plaintiff requested so to do, have wholly failed and refused to execute the aforesaid notes and mortgage, as by their contract they agreed to do, on which account they are indebted to plaintiff in the sum of $1,850, with interest, for which it prays judgment."

To this petition was attached the following affidavit by one of the plaintiff's agents: "Affiant states that the plaintiff in the above-entitled cause has a just demand against the defendants therein, which will be due as follows: $650, due January 1, 1890; $650, due January 1, 1891, and $550, due January 1, 1892; and that the amount, which the affiant believes the plaintiff ought to recover, after allowing all just credits and set-offs, is $1,850; and

"*First.* That this affiant has good reason to believe and does believe that the defendants have fraudulently concealed, removed or disposed of their property or effects, so as to hinder or delay their creditors.

"*Second.* That the debt sued for was fraudulently contracted on the part of the debtors.

"*Third.* That the defendants have failed to pay the price or the value of the article or thing delivered, which by contract they were bound to pay upon delivery.

"*Fourth.* That the defendants have fraudulently conveyed or assigned their property or effects, so as to hinder or delay their creditors."

The contract referred to in the petition is as follows:

"MEMPHIS, Mo., 11–16–1888..

"*C. Aultman & Co., Canton, Ohio.*

"You will please ship for the undersigned, in care of J. S. Collins, agent at Memphis, Missouri, by the route you think best and cheapest, if possible, on or before, as soon as possible, one number 12 Phœnix engine on trucks, twelve-horse-power, with self-guide traction att., also one single E sawmill and the fixtures and extras usually furnished with said engines by you, with fifty-two-inch saw complete.

"In consideration whereof, the undersigned agrees to receive same on its arrival, subject to all the conditions of the warranty printed below, pay freight and charges thereon from the factory, and also agrees to pay to your order, at the time and place of delivery, the sum of $1,850.

"Payable as follows, to-wit: Cash, $————, and execute notes with approved security, as below, having upon the back of each the property statements as shown on this order. Said notes to draw interest at eight per cent. per annum. Note for $650, due January 1, 1890; note for $650, due January 1, 1891; note for $550, due January 1, 1892. And further agrees to give in security of the foregoing notes a first mortgage on the above-named machinery, and on the following other property viz.:

C. Aultman & Co. v. Daggs.

## "WARRANTY.

"The above machinery is warranted to be made of good materials, and, with proper use and management, to do as good work as any other of its size, made for the same purpose in the United States. If, inside of five days from the day of its first use, the said machine shall fail to fill said warranty, written notice shall be given to C. Aultman & Co., and also to the local agent from whom the same was purchased, stating wherein it fails to fill the warranty, and a reasonable time allowed them to get to the machine and remedy the defect, if any there be (if it be of such a nature that a remedy cannot be suggested by letter), the undersigned rendering necessary and friendly assistance. If the machinery cannot be made to fill the warranty, that part which fails shall be returned by the undersigned to the place where received, and another furnished which shall perform the work, or the money and notes which shall have been given for the same to be returned, and no further claims to be made on C. Aultman & Co.

"It is further mutually understood and agreed that use of said machinery, after the expiration of the time named in the above warranty, shall be evidence of the fulfillment of the warranty, and full satisfaction to the undersigned, who agrees thereafter to make no other claim on C. Aultman & Co; and, further, that if the above machinery, or any part thereof, is delivered to the undersigned before settlement is made for the same, as herein agreed, or any alterations or erasures are made in the above warranty or in this special understanding and agreement, the undersigned waives all claims under warranty.

"(X) It is expressly understood that all agreements appertaining to this order are included in the above.                    A. J. DAGGS,
                                    "R. E. DAGGS.

"Post Office, Memphis,⎫
"County, Scotland, ⎬
"State, Missouri. ⎭

"(X) This order taken and recommended for acceptance by ——— Agent. No verbal agreements of any kind appertaining to this order will be recognized. All agreements must be in writing."

The defendants filed a plea in abatement, which on a trial at the June term, 1891, of the Marion circuit court, was decided in favor of the defendants. The verdict was returned on the nineteenth day of June, which was Friday. On the twenty-third of the same month and during the continuation of the term, the plaintiff filed motions for new trial and in arrest of judgment. On the day following both motions were overruled, and leave given to plaintiff to file bill of exceptions by November 14. On the same day the court, by its order, required the defendants to answer to the merits on or before September 20, and the plaintiff was required to reply on or before October 20. On the eighteenth of September the defendants complied with this rule. Among other matters set forth in their answer, a clause in the nature of a plea in abatement of the suit was interposed, which was to the effect that, the judgment dissolving the attachment having been unappealed from, and the action being based on an unmatured demand, the court was without jurisdiction to proceed further in the case. On the twenty-eighth of September the plaintiff filed its bill of exceptions. On November 9, it being the second day of the November term of court, the plaintiff presented an application for a change of venue from the circuit, on the ground of prejudice, both on the part of the presiding judge and the inhabitants, the consideration of which was passed to some future day. On November 10, and during the same term,

the defendants filed a motion to dismiss the suit for the reasons stated in the answer. On November 18, this motion was sustained and the cause dismissed. The plaintiff protested against the right of the court to entertain the motion to dismiss without first making some disposition of the application for a change of venue. The plaintiff's objection was overruled, its application for a change of venue ignored and the judgment of dismissal ordered. The plaintiff filed a motion which counsel designated as a motion in arrest, in which complaint was made of the action of the court in dismissing the case, and also of its failure to act on the application for a change of venue. This motion was overruled, and thereupon the plaintiff filed a supplemental bill of exceptions, and prayed for an appeal which was granted.

. Some further reference may be made here to the record before us, as the matters are directly involved in the questions presented for our determination. Under section 562, Revised Statutes, 1889, it was the duty of the plaintiff to appeal directly from the judgment on the plea in abatement, and such appeal would have operated as a *supersedeas* of the judgment dissolving the attachment, and also have had the effect to stay all further proceedings until the final determination of the appeal. But the legislature, at the session in 1891 (Laws, 1891, p. 45), repealed section 562, and in its stead enacted a new section, in which the law was so changed as to prohibit a plaintiff under such circumstances from appealing directly from a judgment dissolving the attachment, and to permit him to do so only after the final determination of the merits. The new section went into effect on June 22. In the present case, the verdict on the trial of the plea in abatement was returned on June 19, while the old law was in force. Touching the plaintiff's right of appeal

and its mode and manner, it is now conceded that the old law must govern. However, the plaintiff's counsel proceeded upon the erroneous supposition that the new statute would govern, as it went into effect before the motion for a new trial was determined. Acting upon this idea no appeal was asked from the judgment dissolving the attachment. After the final disposition of the case the plaintiff's counsel, becoming satisfied that the appeal from the final judgment would not entitle the appellate court to review matters pertaining to the trial of the plea in attachment, presented an application to this court for a special appeal from the judgment dissolving the attachment. The special appeal was granted on February 16, 1892. This is the condition of the record before us.

It is insisted by defendants' counsel that the right of this court to grant an appeal under section 2250, Revised Statutes, 1889, is limited to an appeal from *final judgment only*, and that, as a judgment dissolving an attachment is not a final judgment, our jurisdiction was erroneously exercised. We will discuss this question after we have disposed of the assignments of error, which are based on the court's action in making a final disposition of the cause.

In support of the motion to dismiss the defendants read the petition and affidavit and the judgment of the court dissolving the attachment. The only ground upon which it is possible to rest the judgment of the court is that, at the time the suit was instituted, the demand upon which it is based was not due; that the attachment, which alone conferred jurisdiction, had been dissolved at the June term of the court, and the judgment therein unappealed from, and that by reason thereof the court was without further jurisdiction in the case and could only dismiss it.

Before we proceed with the discussion there is a preliminary matter suggested by defendants' counsel which we must first dispose of. It is insisted that, as there was no motion for a new trial, the court's action in reference to the motion to dismiss cannot be reviewed. The decision of a trial court upon a motion, which results in a final determination of the matter in controversy, will be reviewed, although there was no motion for a new trial. *Parker v. Waugh*, 34 Mo. 340; *Bruce v. Vogel*, 38 Mo. 190; *Slagel v. Murdock*, 65 Mo. 522; *Johnson v. Latta*, 84 Mo. 139. Where the ruling of the court on a motion concerns some preliminary matter, and occurs during the trial of a cause, and pertains thereto, then such ruling becomes strictly a matter of exception, and all matters pertaining to it must be preserved in the bill of exceptions, and the attention of the court must be called to the ruling in the motion for a new trial. *Crow v. Stevens*, 44 Mo. App. 137, and cases cited. Quite a different case, however, is presented where the court dismisses a cause without a trial on the merits. Where the judgment entry in such a case does not affirmatively show the ground of the court's judgment, or if evidence was taken on the motion, then a bill of exceptions would be necessary in order to advise the appellate court of the nature of the motion and the evidence adduced; but we are unable to see any necessity for a motion for a new trial, for, in contemplation of law, there has been no trial.

It is undoubtedly the law that a suit by attachment, which is based on a claim not due, must be dismissed when the issue on the plea in abatement is found for the defendant. No authorities need be cited in support of this proposition The right to institute such a suit depends solely on the right to attach, and, when the right to attach is finally decided not to exist, the juris-

diction of the court as to the subject-matter of the suit necessarily ceases. The trial judge in the case at bar proceeded upon this idea; that is, that there was a total want of jurisdiction, after the plaintiff had failed to appeal from the judgment dissolving the attachment, and, therefore, the court could only dismiss the cause. If the court was right in its conclusion as to the nature of the plaintiff's action, that is, that the suit was based upon an unmatured demand, then the action of the court on the motion to dismiss, standing by itself, was right. Whether the court committed error in refusing to pass on the application for a change of venue, it is not necessary for us to decide, as we have concluded that the trial judge was wrong on the main question.

We are of the opinion that the averments in the petition make out a case for damages for a violation of the contract by the defendants, in that they failed and refused to give their notes and chattel mortgage for the property sold, and that the action is not for the recovery of the price of the goods. The law is well settled in the books that, where there has been a sale of goods to be paid for by a note or bill, payable at a future day, if the goods are delivered and the vendee refuses or fails to comply with his part of the contract by giving his note, the vendor can immediately sue as for a breach of the contract, and the measure of his damage is *prima facie* the amount of the note. This right of action is authorized not only upon the idëa of a special promise to give the note, which has been violated, but, as Mr. Parsons in his work on contracts says, "because, by the practice of merchants, this note or bill might be made, by the vendor getting it discounted, the means of present payment." 3 Parsons on Contracts [5 Ed.] p. 210. The rule as above stated is supported by a long list of authorities. *Hayes v. Weatherman*, 14 Ind. 341; *Hanna v. Mills*, 21 Wend.

90; *Wade v. Berg*, 18 Barb. 139; *Barron v. Mullin*, 21 Minn. 374; *Reinhart v. Olwine*, 5 W. & S. (Pa.) 157; *Girard v. Taggert*, 5 S. & R. (Pa.) 19; *Manton v. Gammon*, 7 Bradw. 201; *Becknell v. Buck*, 58 Ind. 354; *Clodfelter v. Hulet*, 72 Ind. 137; *Carnahan v. Hughes*, 108 Ind. 225.

If we rightly understand the defendant's counsel, they do not question the law of the foregoing cases; but their contention is that the plaintiff's petition must be treated as stating an action for the price of the goods. The main stress of the argument in support of this is that the plaintiff's agent stated in the affidavit for the attachment that the debt was not due. Therefore, it is argued, that, unless the action is treated as for the price of the goods, the petition and affidavit are inconsistent. The case of *Deering v. Collins*, 38 Mo. App. 80, is cited in support of this. The decision in that case is in no way applicable. There the suit was based on an alleged promise by the defendant to pay to the plaintiff the balance found due him on a settlement. One of the grounds of attachment was that the damages sued for grew out of the commission of a felony or misdemeanor. The court refused to allow the plaintiff to introduce any evidence in support of this ground. The Kansas City Court of Appeals sustained this action, and we think properly so, for the reason that the alleged ground of attachment was inconsistent with the cause of action stated in the petition; that, if the petition was true, the ground for attachment could not possibly be true. But the law of that case in no way helps out the defendants' contention. The nature of the plaintiff's cause of action must be ascertained from the averments in the petition and not from the statements made in the affidavit for the attachment. The petition sets out the contract specially, and states its conditions, that is, that the

defendants were to give their notes and a chattel mortgage on the property sold; and it then avers a delivery of the property, and a failure on the part of the defendants to give their notes and mortgage. These averments clearly make the action one for damages for the breach of the special contract, and entitle the plaintiff to immediate compensation. That the amount for which the property was sold was then and there due, was a conclusion which the law draws from the facts stated in the petition, and the statement made by the plaintiff's agent in the affidavit, that the debt was not due, could in no way affect the petition or change the legal conclusion.

We, therefore, conclude that the court committed error in dismissing the case. The plaintiff was entitled to a trial on the merits.

We now come to the attachment branch of the case. The defendants challenge the right of special appeal from the judgment in their favor on the plea in abatement. If they are right, then we are without jurisdiction in the premises, and the appeal granted by us must be dismissed. The question is a new one, and its solution is by no means free of difficulty.

Section 2250, Revised Statutes of 1889, under which the special appeal was granted, reads: "Any judge of the supreme court or either of the courts of appeals, respectively, in cases appealable to said courts upon inspection of a copy of the record, may grant an appeal by special order for that purpose at any time within one year next after the rendition of the final judgment or decision of the cause. But no such order shall be granted by such court or judge, unless it appear from an inspection of a copy of the record that error was committed by the trial court against the party applying for the order, and materially affecting the merits of the action."

So much of section 562, Revised Statutes of 1889, as is pertinent to the present inquiry, reads:   "Upon such issue (plea in abatement) the plaintiff shall be held to prove the existence of the facts alleged by him as the ground of the attachment, and if the issue be found for him, and the court denies the defendant a new trial of said issue, judgment shall be rendered against the defendant sustaining the attachment and for the costs of the attachment proceeding, and the defendant may file his bill of exceptions as upon any other matter in the proceeding, and answering to the merits shall not be a waiver of such exceptions and the court shall proceed; but if such issue be found for the defendant, the court shall thereupon render judgment that the attachment be abated at the costs of the plaintiff and his sureties. The plaintiff against whom such issue is found and judgment rendered *may appeal from such judgment*, and such appeal shall operate as a *supersedeas* of such judgment, and shall preserve the attachment in full force until the dismissal or determination of such appeal.   If the plaintiff  *   *   *   *fails to appeal from such judgment* *   *   *   the plaintiff and his sureties shall be liable on their bond,   *   *   *   *and after such failure of the plaintiff to appeal*   *   *   *the defendant may plead to the merits*.   *   *   *   *The defendant shall not be required to plead to the merits of the action until after the time fixed by law for appeals shall have expired, if the plaintiff calls for an appeal;* or if an appeal is taken, until after its determination, and if the party against whom judgment shall be rendered *fails to appeal during the time fixed by law for appeals in other cases*, he shall be deemed to have waived all right to have such judgment reviewed."

This court in the case of *Duncan v. Forgey*, 25 Mo. App. 310, decided that exceptions taken on the trial of a plea in abatement *could be reviewed on appeal only*, and

that a writ of error would not be allowed in such a case. The supreme court in the case of *Young v. Hudson*, 99 Mo. 102, decided the question the same way. But neither court has decided within what time such an appeal must be taken; that is, whether section 562 in effect provides for a special appeal, which must be taken by the plaintiff during the term at which the trial of the plea in abatement was had, or, if taken by the defendant, at the time at which the cause is finally disposed of; or whether each party may within a year thereafter apply to the proper appellate court for a special appeal under section 2250.

The strongest argument against the right of appeal under section 2250 is that it would have the effect, where the plea in abatement was found for the defendant, to stop further proceedings in the case for a year, unless the plaintiff should elect to proceed. This would necessarily be the result, but with this we have nothing to do. It is our simple duty to interpret the statute as written, having reference to other statutes of like character, and then to enforce it. The last clause of section 562 reads: " And, if the party against whom judgment shall be rendered *fails to appeal during the time fixed by law for appeals in other cases*, he shall be deemed to have waived all right to have such judgment reviewed." Appeals in other cases may be granted under section 2250 within a year after the rendition of the judgment. Why may not such an appeal be granted from a judgment dissolving an attachment? This conclusion seems to be unavoidable when the two sections are read together. The reason suggested in opposition merely addresses itself to the wisdom of the law. The supreme court, in *Young v. Hudson, supra*, in discussing section 562 said: " It has further enacted that the proceedings upon that plea shall be reviewable by appeal. The effect of this is to limit the time within

which there may be such review, since the right of appeal by our laws must be exercised within a briefer period than that allowed for bringing a writ of error." We, therefore, conclude that our action in granting the special appeal from the judgment on the plea in abatement, was proper, and we so rule.

The grounds of attachment set forth in the affidavit were: *First.* A fraudulent concealment and removal of property. *Second.* That the debt was fraudulently contracted. *Third.* That the defendants had failed to pay the price or value of the property delivered, which by contract they were bound to pay upon delivery. *Fourth.* A fraudulent conveyance or assignment of property, etc. At the close of the evidence the court instructed the jury that there was no evidence to support either the first or third ground of attachment. The plaintiff assigns for error the ruling of the court as to the third ground. We will dispose of this assignment first, as it presents the material question.

It will be noted that the contract between the parties clearly stipulated that the notes should be executed and delivered and a first mortgage given on the property sold at the time of its delivery, making the several acts contemporaneous. It was conceded on the trial that the defendants had obtained possession of the property without giving the notes and mortgage, and that they afterwards retained the property, but refused to comply with the contract and failed to satisfy the claim in any manner. The property was shipped to the defendants in care of the plaintiff's local agent at Memphis, and it arrived at its destination in the latter part of December, 1888. Without undertaking to go into details, it is sufficient to state that the evidence tended strongly to prove that the defendant Azro was permitted to take possession of

and remove the property without first giving the notes and mortgages, upon the assurance and representation that his codefendant was sick, and that, as soon as he was able to come to town, the business would be closed up. The defendants, however, denied this. But they did admit that, as soon as they got possession of the property, they gave a mortgage on it to their brother, who lived in Arizona, to secure an alleged indebtedness of $1,850. They also admit that plaintiff's agent had no knowledge of the chattel mortgage or of an intention on their part to give it, and that they never communicated the fact although the agent had importuned them to comply with their contract. The only justification or excuse offered by the defendants for this breach of the contract was that, at the time the contract was signed, the plaintiff's agent said that he would discount the bill $200 if the cash was paid, and that it was for the purpose of getting the benefit of this discount that they made arrangements with their brother to get the money. The trouble with this attempted explanation is that the defendants failed to communicate these facts to the plaintiff's agent; but on the contrary their own testimony tended to convict them of an intention or attempt to conceal the mortgage, and in fact it was unknown to the plaintiff's agent until the day before this suit was instituted, which was about a month after its execution. It is believed that this statement is sufficient to a proper understanding of the questions presented by this assignment.

In striking down the third ground of attachment, the court evidently proceeded upon the theory, that the agreement to give the notes and mortgage did not amount to an undertaking to pay on delivery within the meaning of the attachment law; that is, that the contract necessarily implied credit. Very many authorities are cited in support of this ruling of the court, but

the most of them only decide that the acceptance by the creditor of the note or check of the debtor or some third party does not of itself amount to the payment of a pre-existing debt. To make it so there must have been an express agreement to that effect. This law is well settled, but we are of the opinion that we have quite a different case before us.

We assume that the vendor and vendee may stipulate that payment of the price or value of the article sold may be made in something else besides money. To hold otherwise would be to curtail the right of contract. But whatever may be the contract, the price—whether it be money, a note or check—must by the terms of the contract be payable on delivery of the property sold, else attachment will not lie. In our opinion the case we have here must be worked out on this line of thought. The questions then are, did the parties intend that the property sold should be paid for by notes and a first mortgage, and, if so, was it the contract that the notes and mortgage should be given at the time of the delivery of the property sold. We think that both questions must be answered in the affirmative. The defendants in the contract expressly stipulated that in consideration of the shipment of the property sold to them (in care of the plaintiff's agent), they would receive the property, pay freight charges thereon, and also *pay* to plaintiff's order the sum of $1,850 by giving their notes in the manner specified, and secure same by first mortgage on the property sold. That it was intended that the notes and mortgage should be given at the time of delivery, is put beyond all dispute by this clause in the contract: "If the machinery cannot be made to fill the warranty, that part which fails shall be returned by the undersigned to the place where received, and another furnished which shall perform the work, *or the money and notes*

*which shall have been given for the same to be returned,* and no further claim to be made on C. Aultman & Co."

The case of *Harlow v. Sass,* 38 Mo. 34, is authority for our conclusions. That was an attachment suit wherein the ground of attachment was a failure or refusal to pay a balance due on a piano which, it was alleged, was agreed to be paid on delivery of the piano. The clause in the contract in reference to this balance reads: "For the balance I am to receive note of Mrs. Hamilton, indorsed by Mr. Sass to be due April 1, 1862, for $200 (dated), January 12, 1862." The court in the course of its opinion said: "It must be stipulated by the contract that the price or value of the article or things sold was to be paid for on delivery, else attachment will not lie. If credit is given or intended, the creditor must pursue his remedy by an ordinary action at law. Now, what is the reasonable construction of the contract as evidenced by the receipt of Harlow, introduced as testimony? He acknowledges the receipt of the second-hand piano, valued at $200, and also of $100 in cash, and for the balance he explicitly states that he is to receive the note of Mrs. Hamilton, indorsed by Sass, payable on the first of April ensuing. *This language plainly implies that the note was to be delivered at some future day, and that credit was intended.*" This language clearly implied that, if the agreement had been for the *immediate delivery of the note,* and if it could have been ascertained from other portions of the contract that the *note was intended as payment,* then the cause for the attachment would have been made out. The decision of this court in the case of *Bertiaux v. Dillon,* 20 Mo. App. 603, is not in conflict with the conclusions reached by us. There it was held that the contention, that the special contract was evidence of an agreement that the note should be an absolute payment, could not be maintained, because

the bill of exceptions plainly declared that there was no agreement or understanding that the note should be received as absolute payment for the property sold. We, therefore, conclude that the evidence was sufficient to establish this ground of attachment, and that the court erred in its rulings on the question.

There is another question which we deem it necessary to discuss. It relates to the action of the court in ruling that a certain statement, made by the defendant Azro to one J. M. Jayne, who was an attorney and also a notary public, was a privileged communication. Jayne took the acknowledgment of the defendants to the chattel mortgage to P. P. Daggs. During the interview Jayne asked whether the defendants were getting money from their brother to pay for the machinery. Azro replied that *"a corporation had never beat me or got ahead of me yet; we are like you; we are not here for our health."* The court excluded this statement from the jury.

The statute (R. S. 1889, sec. 8925) provides "that an attorney-at-law shall be incompetent to testify concerning any communication made to him by his client in that relation, or his advice thereon, without the consent of the client." This statute has been construed to adopt the strict rule of the common law, which excludes evidence of all declarations made to counsel in order to solicit professional advice. *Crow v. Reggin*, 50 Mo. 335; *Wilson v. Goodlove*, 34 Mo. 337; *Riddles v. Aiken*, 29 Mo. 453. But the relation of attorney and client must exist as to the subject-matter of the communication, else the communication will not be privileged. In *Johnson v. Sullivan, supra*, it was held that the relation of attorney and client existed, when the attorney had been employed merely as a conveyancer to write deeds. In the case of *Wilson v. Goodlove*, 34 Mo. 337, the communication was held not to be privileged,

although the witness had acted generally for the defendant in his legal matters. It appeared that, as to the matter to which the communication pertained, the witness occupied no such position, but on the contrary held an adversary position.

Mr. Jayne was examined at great length, and testified in substance that he had previously acted as attorney for the defendants in one or two suits, but he was not consulted by them in a professional capacity as to the chattel mortgage; that the mortgage was written by Robert Daggs (who is a lawyer or has studied law), and that he (Jayne) was only employed in his capacity as notary to take the acknowledgment of the parties to the mortgage; that the defendants did not consult him about the mortgage, but he suggested that the date of the maturity of the notes described in the mortgage, and the rate of interest which they bore, ought to be inserted, and that he either made the necessary interlineations in the instrument or filled up some blanks showing these facts. We have read the examination of Mr. Jayne, and it has failed to convince us that the trial judge was right in his ruling, but our minds have been forced to a contrary conclusion. This evidence was very material to the plaintiff's case, as it bore directly on the second and last grounds of attachment, and, therefore, its exclusion was clearly prejudicial, and must of itself work a reversal of the judgment.

There are other matters complained of which have been presented and argued in the briefs, but we do not deem it necessary to discuss them, as they are not likely to occur or to become material on another trial.

With the concurrence of the other judges the judgment of the court dissolving the attachment, and also its judgment dismissing the cause, will be reversed and the cause remanded. It is so ordered.