A. L. WEST, Appellant, v. REBECCA FREEMAN, Respondent.

Kansas City Court of Appeals, March 22, 1897.

1. **Attorney and Client:** PRIVILEGED COMMUNICATION: WITNESSES. To establish the relation of attorney and client the attorney must agree to be the attorney of the party and the party must agree to have the other for an attorney, otherwise there is no contract, and the attorney and his client alike are competent to testify.

2. **Contracts:** INSTRUCTIONS: ACCEPTING SERVICE. Where a party through the services of another was enabled to secure a claim in the. Cherokee Strip at the "grand run," he ought to pay the value of the services, though the contract was not in every way complied with, and instructions on this point are discussed in the opinion.

West v. Freeman.

*Appeal from the Polk Circuit Court.*—HON. ARGUS
COX, Judge.

REVERSED AND REMANDED.

*T. G. Rechow* and *Herman Pufahl* for appellant.

(1) The conversation between Mrs. Freeman and
T. G. Rechow was not privileged. *Aultman & Co. v.
Daggs*, 50 Mo. App. 298; *Wilson v. Godlove*, 34 Mo.
337; *State v. Hedgepeth*, 125 Mo. 18, 20; *Hickman v.
Green*, 123 Mo. 179, point 3; Weeks on Attorneys at
Law, sec. 151. (2) There was no relation of attorney
and client existing. *Hickman v. Green*, 120 Mo. 187,
point 6; Weeks on Attorneys at Law, sec. 183, and last
part of section 185; *Basye v. State*, 63 N. W. Rep. 818;
*Weinstein v. Reid*, 25 Mo. App. 48. (3) When a party
is consulted as a friend and not as attorney, the com-
munication is not privileged. *Hoffman v. Smith*, 1
Caines (N. Y.), 160; 2 N. Y. Common Law Rep., bot-
tom page 107; *Patton v. Glover*, 21 Wash. L. Rep. 794.
(4) Herman Pufahl should have been allowed to tes-
tify in regard to the conversation between Mrs. Free-
man and Mr. Rechow; he was in no way connected in
any business relation with Mr. Rechow. *Jackson v.
French*, 3 Wend. (N. Y.) 339; *People v. Buchanan*, 39
N. E. Rep. 854; *Hoy v. Morris*, 13 Gray, 520; *Tyler v.
Hall*, 106 Mo. 320; *Basye v. State*, 63 N. W. Rep. 817,
818; *Weinstein v. Reid*, 25 Mo. App. 48, point 4. (5)
The first instruction given for defendant is not the law
and is misleading; it is also conflicting with instruc-
tion number 2 given for plaintiff. (6) Instruction
number two for defendant should not have been given,
as it singles out a special defense. *Haney v. City of
Kansas*, 94 Mo. 334; *Compton v. Baker*, 34 Mo. App.

140; *Siegrist v. Arnot*, 10 Mo. App. 209; *Copp v. Hardy*, 32 Mo. App. 593.

*Upton & Skinker* for respondent.

(1) One who seeks counsel, but pays no fee, and employs others in the prosecution of the business, is considered a client to the extent that his communications are privileged. If this was not the rule one might seek advice, expecting to employ and pay, and after his story had been heard the attorney might decline the retainer, and the information imparted be used against him. Therefore the conversation between Mrs. Freeman and Mr. Rechow was privileged. *Hull v. Lyon*, 27 Mo. 570; *Johnson v. Sullivan*, 23 Mo. 474; *Cross v. Riggins*, 50 Mo. 335. (2) The rule which makes communications between an attorney and his client privileged, applies with equal force to the attorney's clerk. Mr. Pufahl had read law in Mr. Rechow's office, was his kinsman and closely associated with him in business. He assisted him in preparing instructions, copied his pleadings for him, and acted as his clerk and assistant. Under these circumstances every authority cited by appellant on this point shows that he was not a competent witness. The question of whether Mr. Pufahl was, at the time of the alleged conversation between Mr. Rechow and Mrs. Freeman, acting as Mr. Rechow's clerk, or so associated in business with him as to disqualify him as a witness, was a question of fact for the trial court, who had the witness before him and who personally knew of the business relations between them. (3) Instruction number 2 for defendant does not single out a special defense. Appellant seeks to recover pay for services rendered respondent by one I. M. Clubb in locating a claim for her. Instruction number 2 tells the jury that "if Robert Crain, and not I. M. Clubb,

West v. Freeman.

secured the claim for defendant, then plaintiff can not recover." The jury would doubtless have known this without the instruction. (4) There was no error in giving the first instruction for defendant. A mere admission is not conclusive when there is no element of estoppel present. *Newcomb v. Jones*, 37 Mo. App. 475.

SMITH, P. J.—This is a suit originating before a justice of the peace. The plaintiff's statement alleged,

STATEMENT.

in substance, that the defendant agreed to pay one I. M. Clubb the sum of $75 for services rendered her in locating a claim in the Cherokee Strip, and that said "Clubb has assigned said debt and all rights thereunder to plaintiff," etc.

The plaintiff introduced evidence sufficient to establish his *prima facie* right to recover. The evidence adduced by the defendant was about to this effect: That she was one of the thousands who, on the sixteenth of September, 1893, "made the run" into what is known as the "Cherokee Strip," for the purpose of securing a homestead; that the defendant and another woman—a Mrs. Smith—on the day preceding the opening of the "strip" were at a place named Marshall, on the southern border of the strip, when they entered into an agreement with Clubb, by which he agreed to take them into the strip the next day and get them good claims, furnish them as good a team as there was in the Territory, get a new hack and a good driver, who had formerly been a cowboy and knew the country, locate them by 3 o'clock on the next day, send a "grub wagon" with plenty to eat, take them to Enid, and stay there with them until they filed their claims, and then plow around their claims; for which they were to pay him what was right. It seems from the defendant's evidence that Clubb, in the first instance,

asked $75 for the services he proposed to render, but this amount the defendant declined to pay, but offered to pay what was right, and in this he appears to have acquiesced.

The morning the run was to be made he appeared with an old borrowed hack, to which was attached a span of mules in charge of a driver by the name of West, who was a total stranger in the country. The start was made under these conditions, and after they had proceeded some seven or eight miles, the hack broke down, the driver detached the mules from the hack and went to look for Clubb, and being a stranger in the country soon was lost and the defendant saw nothing more of him until the next evening. It appears that these helpless women were left alone, without food or water, in the torrid heat of the treeless prairie, until the next evening when Clubb again appeared and conducted them to where there was a "grub wagon," where they were provided each with "an onion, a piece of fat meat and a piece of dry bread;" that while feasting on these toothsome viands, they met one Robert Crain, who said that he had two claims and that he might let them have the same; that in company with Crain and others the women proceeded to Enid, where the land office was kept, and on the way thither the claims which Crain had referred to were seen. It appears that the defendant did not see Clubb after she left the "grub wagon" for Enid. On arrival at the latter place Crain informed the defendant and Mrs. Smith that they could have his claims, as he had concluded not to file on them; the defendant remained at Enid for about a week, and during the time succeeded in filing her claim on the Crain location; that the defendant paid all the expense of her board and lodging while waiting for an opportunity to file her claim.

It appears further that after the breakdown Clubb took defendant to Black Bear, where she had lunch, and from thence he conveyed her some eight miles west to two claims, with one of which defendant was satisfied. Clubb and defendant then went to Enid, where the former procured the numbers of the claim and defendant filed on the same. There was much other testimony, some of which was quite conflicting. It seems further that defendant wrote several letters to Clubb promising to pay for his services, etc. The defendant had judgment and plaintiff appealed.

The plaintiff complains that the court erroneously rejected his offer to prove by his attorneys, Messrs. Rechow and Pufahl, that the defendant had told the latter that plaintiff had the claim in suit and at the same time inquiring whether she would be safe in paying it without having an order from Clubb to plaintiff, and that defendant, in the same communication, admitted that she owned the claim. The defendant was examined at length in relation to the circumstances under which she made the communication to plaintiff's attorneys, and stated, among other things, that Mr. Rechow had always been the attorney for her family and that she had gone to his office and made the disclosures she did for the purpose of seeking his advice. Mr. Rechow testified that as defendant had not employed him previous to, or at the time she consulted him, he considered she had consulted him as a friend and not as an attorney. In *Cross v. Riggins*, 50 Mo. 335, it was said by Judge BLISS, in passing upon a similar question, that: "The term client, then, in the statute, should be used in its most enlarged sense, and the prohibition, section 8925, Revised Statutes, should close the mouth of all who have testified to disclosures looking to professional aid." And to the same effect is *Aultman v. Daggs*, 50 Mo. App.

ATTORNEY and client: privileged communication: witnesses.

280; *Hull v. Lyon*, 27 Mo. 570. But in *State v. Hedgepeth*, 125 Mo. *loc. cit.* 21, it is said, quoting from Weeks on Attorneys at Law, section 185, that "two things are necessary to establish the relation between attorney and client: *First*, the agreement of the attorney to be an attorney for the party; and, *second*, the agreement of the party to have the other for an attorney." In the present case, as in *Hedgepeth's* case, *supra*, no fee was paid nor was there any contract, express or implied, by which one was to be paid. *Hickman v. Green*, 123 Mo. 187.

It would thus seem that the rule declared in *Cross v. Riggins*, 50 Mo. *supra*, has been overturned by that declared in the *Hedgepeth* case, and should no longer be followed. It results that the trial court erred in rejecting the defendant's offers of proof just referred to. In this connection it is not out of place to say that since the relation of attorney and client did not exist between defendant and Mr. Rechow, it must follow that the testimony of Mr. Pufahl, whether he was clerk of Mr. Rechow or not, was improperly rejected.

The plaintiff's seventh instruction should have been given. It fairly submitted to the jury the plaintiff's theory of the case. The defendant's first and second instructions should not have been given. The first told the jury that unless the plaintiff complied with the contract that he could not recover. If CONTRACTS: instructions: accepting service. Clubb, in pursuance of his contract with defendant, secured the latter a claim which she accepted and filed on, she ought to pay the value of the services so rendered her, whether the contract was in every way complied with or not. There was no issue in the case to justify the giving of the defendant's second instruction, which told the jury that if Crain and not Clubb secured the claim, the plaintiff could not recover. It is clear that with-

out the services of Clubb the defendant would not have secured the claim.

The evidence does not show an exact compliance on the part of Clubb with his contract, but it does tend to show a substantial compliance, or at least the performance of services thereunder which were accepted by defendant, and by which she was enabled to secure for herself the claim on the public domain for which she "made the run."

It follows that the judgment must be reversed and cause remanded. All concur.