### CUSHING v. CHAPMAN et al.

#### (Circuit Court, E. D. Missouri, E. D. May 5, 1902.)

#### No. 4,409.

1. RAILROAD BONDS—EQUITABLE ASSIGNMENT.

Plaintiff's assignor, in consideration of the assignment of a judgment against a railroad company, received a contract by which another railroad company agreed to transfer and deliver to such assignor its first mortgage bonds, to be thereafter issued, to the face value of such judgment, the bonds to be delivered as soon as practicable, and as early as any issue of bonds were delivered to any one else in the work of constructing the railway. The judgment was assigned, and thereafter all of the bonds authorized by the issue were issued, and transferred to other parties, under separate contracts, without the delivery of any bonds to plaintiff's assignor, who assigned a part of his claim therefor to plaintiff. *Held*, that such contract was a mere promise to pay a debt out of a particular fund or mass of property to be thereafter created, and did not constitute an equitable assignment thereof, enforceable against the bonds issued.[1]

2. SAME—CHARGE—EQUITABLE LIEN.

Such contract did not create a charge or equitable lien either on the entire issue of bonds so issued in the hands of subsequent holders, nor on any particular bonds issued separately to other parties under separate contracts.

3. SAME—IMPLIED CONTRACT.

Where a railroad company contracted, in consideration of the assignment of a judgment, to deliver to the judgment creditor certain bonds of such railroad to be thereafter issued, but the contract did not specify any particular bonds to be delivered, nor otherwise give such judgment creditor any prior right to his aliquot part of the total issue, and the company failed to perform its contract, such judgment creditor had no enforceable equitable interest in the bonds issued to other parties, but was only entitled to recover the value of the bonds in money under an implied contract.

### On Demurrer.

In 1893 the Tennessee Central Railroad was organized under the laws of Tennessee for the construction and operation of a railroad between designated points. Newton & Co. contracted for the construction of a portion of this road, and filed a mechanic's lien thereon to secure an account amounting to $47,000 for such work. The railroad becoming insolvent, under a creditors' bill filed in a court of chancery in Tennessee was placed in the

---

[1] See Assignments, vol. 4, Cent. Dig. § 107, § 111 [b].

hands of a receiver. Newton & Co. obtained judgment for the enforcement of their mechanic's lien in one of the state courts. This judgment was presented to the chancery court administering the property under the receivership, which recognized the claim, and fixed the order of its payment. Under the decree of foreclosure the court fixed an upset price, to wit, $125,000, which the railroad property was to bring at the foreclosure sale. A new company was chartered by the parties interested in the Tennessee Central Railroad, which was incorporated as the Tennessee Central Railway, for the purpose of buying in the property at foreclosure sale, and building and operating the old line, with extensions to other points. The bill alleges that, by conventional arrangement between the syndicate representing the new railway and Newton & Co., it was agreed that if Newton & Co. would not become competing bidders at the foreclosure sale, the new company would take care of their claim out of the first mortgage bonds to be issued by the new company for construction purposes to the extent of 47 bonds of the face value of $1,000 each. After the purchase of the railroad at foreclosure sale, and the execution of the deed of conveyance therefor, said agreement between the Tennessee Central Railway and Newton & Co. was recognized, and the contract was reduced to writing, the controlling provision of which is set out in the opinion of the court. Afterwards the Cumberland Construction Company was organized for the purpose of constructing the railroad, and bonds, secured by a first mortgage lien on the railroad property, were issued to the extent of $1,550,000, and placed with the Mississippi Valley Trust Company, defendant herein, to be delivered by them from time to time for the purpose of raising money in the construction of the road. The bonds were afterwards delivered in part to Naugle, Holcomb & Co., subcontractors, for work done in the construction of the road, and the others were put up as collateral security for moneys borrowed from some of the defendants, to be used in the work of construction, or sold and transferred to other parties for money borrowed for such purpose. The said Tennessee Central Railway failed to carry out its contract with Newton & Co. in not delivering to them the 47 bonds. Newton & Co., becoming insolvent, assigned their interest to different creditors. Forty of the bonds in question, the complainant alleges, were so assigned to him. He brings this suit against said Mississippi Valley Trust Company and all the parties who received any of said bonds as aforesaid who are residents of this jurisdiction to enforce his alleged equitable claim for 40 of said bonds. One Spalding, a citizen of Chicago, Ill., who bought from Naugle, Holcomb & Co. $300,000 of the bonds received by them for construction work, and a large number of the other bonds so obtained as aforesaid by some of the parties who advanced money as above stated, not being within the jurisdiction of this court, is not made a party hereto. To this bill the defendants have demurred.

George A. Mahan and Wm. H. & Davis Biggs, for complainant.
Boyle, Priest & Lehmann, for defendants.

PHILIPS, District Judge (after stating the facts as above). Without undertaking to recapitulate all the facts presented by the amended bill, or discussing all the questions raised by the demurrer, the court will briefly state the grounds of its conclusion. The theory of the bill, as contended by counsel for defendants, is that the Tennessee Central Railway, by its contract with Newton & Co., under whom the complainant claims as assignee, made an equitable assignment and appropriation of 47 bonds, of the denomination of $1,000 each, to be issued by said railway, to be secured by a first mortgage on the railway property. The contention of complainant's counsel is that under the averments of the bill Newton & Co., by said contract, "obtained an equitable estate or title to forty-seven of said bonds to be first thereafter issued, and as soon as issued the railway company held them in trust

for Newton & Co." The said 47 bonds, the bill discloses, were to be a part of a total issue of $1,550,000, of equal dignity, secured by a first mortgage on the railway's property, as the full limit of such issue. This claim depends and turns upon the third paragraph of the written contract between the railway and said Newton & Co., as follows:

"In consideration of said sale and assignment [that is, the assignment of a certain judgment Newton & Co. held against the Tennessee Railroad Company, and assumed by the Tennessee Railway], the party of the second part [the Tennessee Railway] agrees to transfer and deliver to the parties of the first part [Newton & Co.] its first mortgage bonds, to be hereafter issued in the construction of its railway, to the amount of said decree, one dollar of bonds, at their face value, for each dollar of the amount of said decree. The delivery of said bonds to be made as soon as practicable and as early as any issue of bonds are delivered to any one else in the work of constructing said railway."

In its fullest import and broadest construction this is an executory contract or agreement to thereafter deliver to Newton & Co. 47 of the first mortgage bonds to be thereafter issued by the railway "in the construction of its railway," and "to be made as soon as practicable, and as early as any issue of bonds are delivered to any one else in the work of constructing said railway." I understand the law to be that a mere promise, however clear or solemn in character, to pay a debt out of a particular fund, does not operate as an equitable assignment of the fund, and especially so when it is a part of a mass of property to be thereafter created. To constitute such an equitable assignment, there must be such an actual or constructive appropriation of the fund or subject-matter "as to confer a complete and present right on the party meant to be provided for, although the circumstances do not admit of its immediate existence"; that, if the holder of the fund could retain control over it, with the power, sua sponte, on his part, to satisfy the promise in cash, it is fatal to an equitable assignment. Christmas v. Russell, 14 Wall. 69, 20 L. Ed. 762; Bank v. Beal (C. C.) 54 Fed. 577; Badgerow v. Trust Co. (C. C.) 74 Fed. 925; Ex parte Tremont Nat. Bank, 24 Fed. Cas. 184; Foss v. Cobler, 105 Iowa, 731, 75 N. W. 516; Stearns v. Insurance Co., 124 Mass. 63, 26 Am. Rep. 617; Williams v. Ingersoll, 89 N. Y. 518; Hicks v. Brick Co., 94 Va. 746, 27 S. E. 596; Hassack v. Graham, 20 Wash. 192, 55 Pac. 36.

There is also, from the facts apparent on the face of the bill, an insuperable difficulty in fixing the alleged equitable lien upon any specific bonds issued by the Tennessee Central Railway, and turned over, for a valuable consideration, to different parties at different times, to raise money for the construction of the railway. It appears from the bill that $300,000, par value, of bonds issued by Tennessee Central Railway, were delivered to Naugle, Holcomb & Co., as subcontractors, for work done by them in constructing the railway; and the contract made between the complainant's assignor and the Tennessee Railway contemplated that such bonds might be issued and delivered to the contractor, as it also contemplated that first mortgage bonds might also be issued and delivered "in the work of constructing said railway." It also appears from the face

of the bill that the other bonds issued by the railway were put up as security and delivered to the Mississippi Valley Trust Company in trust to secure $1,550,000, borrowed for the purpose of constructing the railway. The bonds issued to Naugle, Holcomb & Co., together with other bonds, issued and delivered by the railway as security for moneys borrowed in the work of construction, to Chapman and others, the first lenders, were transferred in part to one Spalding, of Chicago, Ill., who is not a party to this suit. Is the complainant entitled to enforce an equitable lien upon all of the $1,550,000 of first mortgage bonds issued by the railway? Or is he entitled to have his alleged lien enforced upon any particular numbers of said bonds, and, if so, upon which particular numbers? Under the contract the complainant's assignor was only entitled to the delivery of the bonds "as soon as practicable, and as early as any issue of bonds are delivered to any one else in the work of constructing said railway." Was he entitled to the first 47 bonds issued in kind? If so, who holds them? It does not appear that they are held by the defendants. If he was not entitled to have received the first 47 bonds issued, but was entitled to receive 47 bonds in order next to those issued and delivered to the first taker, which one of these defendants holds said 47 bonds? If this be the proper construction of his contract, and the limitation of his rights, upon what principle can any of the defendants who do not hold said 47 bonds be brought into this suit to be held here while the complainant is litigating and establishing his lien upon 47 bonds, unless the bonds are held in common by all the defendants? If the proper construction of the contract be that Newton & Co. became the equitable assignee of, or acquired equitable title to, 47 bonds, and the complainant is entitled to fix such charge upon the whole mass of $1,550,000 of bonds issued by the railway, the court will have to make ascertainment of the number of bonds held by each taker upon which the equitable lien charged is to be enforced, and make an equitable apportionment among all the purchasers of bonds who took with notice. As Spalding, who, the bill discloses, holds a large bulk of the bonds, is not a party to this suit, no decree made by the court could affect any bonds in his hands, or make any apportionment of the loss as to him. In this aspect of the case the court would have to proceed as to the defendants before it, and fix the alleged equitable lien or charge upon the bonds held by them, and make an equitable apportionment of the loss and burden among them pro rata. The learned counsel for complainant, anticipating this objection, in his brief asserts that, as all the takers of the bonds are, as to Newton & Co., tort feasors, they are jointly and severally liable to answer for the injury to the extent of their several holdings. But under the allegations of the bill all the takers of the bonds issued by the Tennessee Railway are not joint wrongdoers. Naugle, Holcomb & Co., the contractors who did the work on the road, Chapman and others, who made the first loan, and Van Blarcom and the National Bank of Commerce, who made the second loan, each took under separate, independent contracts, at different times, acting entirely independent of each other, without preconcert of action or

common understanding. Therefore there can be no accountability of the several designated classes of takers of the several distinct numbered bonds, except for their own individual wrongful act, if any; and therefore the bill must be multifarious.

The bill, moreover, discloses that this complainant is the assignee of only $40,000 of the claim of Newton & Co. against the Tennessee Central Railway; the remaining $7,000 of the $47,000 claim is outstanding in the hands of third parties not before this court. To which, then, of the 47 bonds, is this complainant entitled? If, under the contract, his assignor was entitled to have issued and delivered to them the first 47 bonds after those issued to Naugle, Holcomb & Co., is he to have the first 40 of the next 47? And, if so, which one of the defendants obtained and holds the particular 40 bonds? Furthermore, if the contract be construed to mean that the Tennessee Central Railway could proceed to issue its bonds "in the work of constructing said railway" up· to the limit, leaving a margin of 47 first mortgage bonds for delivery to Newton & Co., in fulfillment of the contract, it would seem to follow that his specific lien, if he have any, could be enforced only against the party who took the last 47 bonds with knowledge that Newton & ·Co were entitled to receive 47 of the whole number of first mortgage bonds issued. For it must be conceded that parties advancing money to the construction company for building the road, to be paid for by the issue of first mortgage bonds, would have had a perfect right to make such contract, and be entitled to receive first mortgage bonds within 47 of the whole number issuable; and, inasmuch as there would then have remained in the hands of the railway's trustee 47 first mortgage bonds, the complainant would have been compelled to look to them alone for recovery. In other words, the defendants who advanced to the construction company the money with which to construct the road, to qualify it to give a mortgage to secure the issue of bonds, had a perfect right to do so, and take the bonds as security, up to the point where the margin was left of 47 first mortgage bonds remaining undistributed. As all the first mortgage bonds issued for construction purposes, within the limitation, were of equal value and dignity, it was quite immaterial to Newton & Co. whether they received the first or last numbered 47 bonds. And as Newton & Co. had not contracted for any particular numbered bonds, I am unable to perceive how it can be maintained that their contract created a charge or equitable lien upon the whole mass of bonds issued separately to other parties under separate contracts.

Counsel for complainant, also recognizing the rule respecting equitable assignments of a fund asserted in the first part of this opinion, seeks to avoid its force by saying that he is not seeking to enforce an equitable lien, "but is asking the court to protect his alleged equitable title or estate in the bonds in question, which he contends is enforceable in equity not only against the Tennessee Central Railway, but also against all subsequent creditors of the Tennessee Central Railway, and all other persons holding or claiming under the Tennessee Central Railway, as purchasers or otherwise, with

notice of such title." In other words, that "he had an equitable estate in the bonds," and therefore these defendants "must answer for the resulting damage, provided they had notice of such title." This broad statement includes the further proposition that the contract gave to Newton & Co. an undivided equitable interest in the whole issue of $1,550,000 of first mortgage bonds. But the contract does not say so. Newton & Co. were to receive 47 bonds out of a permissible issue of 1,500, and not before any other bonds were issued to any other person, but under terms and circumstances that indicated that a large number of such bonds would be issued 'by the railroad company to other persons "in the work of constructing such railway," and that this entire number might be issued as early as those to Newton & Co. Therefore Newton & Co. acquired no prior right to their aliquot part of the 47 bonds. Indeed, the contract was in no legal sense for the sale of specific personal property by the railway to Newton & Co. It was simply and purely a contract providing a method for the payment of a debt owing by the railway company to Newton & Co., which was out of the promissory obligations to be thereafter issued by the debtor, secured by a first mortgage lien on the railway property. And because the debtor did not keep his promise, but issued like obligations to pay other persons from whom it borrowed money to build the road, the disappointed creditor seeks to charge the bonds—the promises to pay—in the hands of such other creditors with the payment of his debt. I know of no precedent or rule of law supporting so broad a proposition. The provision of the contract for satisfying Newton & Co.'s debts for $47,000 by delivering to them 47 bonds of the first mortgage class was one for the benefit of the debtor, to avoid paying in money, as the money would be needed in the construction of the road. On failure to so pay it could be liquidated in money. C. Aultman & Co. v. Daggs, 50 Mo. App. 280–289, and cases cited. And that was the implied contract, and, as far as these defendants are concerned, it was the complainant's remedy, provided all the bonds had been delivered by and had passed out of the hands of the trustee.

The demurrer to the bill is sustained.