# NATIONAL TUBE WORKS COMPANY v. RING REFRIGERATING & ICE MACHINE COMPANY, Appellant.

### Division Two, December 22, 1906.

1. **ATTACHMENT: Dissolution: Judgment on Merits: Unmatured Demands.** Upon a dissolution of the attachment, the suit is not to be dismissed simply because the demands were not due at the time the suit was instituted. On the contrary, the meaning of the amendment to the statutes enacted in 1891 is that, in suits instituted by attachment, upon a determination of the issue upon the plea in abatement in favor of either defendant or plaintiff, either before or after appeal, the suit shall proceed to judgment on the merits, if the demands have then become due, but "no judgment can be rendered against the defendant upon the merits of the cause of action until it becomes due." (Disapproving Grier v. Fox, 4 Mo. App. 522, and Aultman & Co. v. Daggs, 50 Mo. App. 280.)

2. ———: ———: ———: ———: **Jurisdiction.** Where the suit was instituted by attachment upon unmatured demands and the plea in abatement therein sustained, in determining whether or not the suit on the merits should be discontinued, the question of jurisdiction is not to be determined by a determination of the question of whether or not thereafter the petition states a cause of action—in that, it declares on demands not due. In such case the question of jurisdiction is not in the case. Jurisdiction does not depend on the failure of the petition to state a cause of action. Jurisdiction relates to authority over the subject-matter and over the parties. And if the petition states a case belonging to a general class over which the authority of the court extends, there is jurisdiction over the subject-matter, whether or not it states a cause of action. (Disapproving Aultman & Co. v. Daggs, 50 Mo. App. 280.)

3. **CONSIDERATION: Pleading: Instructions: Proof.** Where the answer pleads an entire failure of consideration for the notes and accounts sued on, defendant is entitled to show a partial failure of consideration, and if the proof shows a partial failure the instructions should not require a verdict for plaintiff unless the proof shows a total failure. But whether or not such an instruction should be given depends on the proof. Where there are several counts in plaintiff's demands, defendant should offer proof directly tending to show which one of them was tainted with a partial failure of consideration, so that the jury may be warranted in decreasing that demand, and unless that is done it is not error for the instructions to require a verdict for plaintiff unless there was a total failure of consideration.

4. ———: ———: ———: ———: **Counterclaim.** Where defendant by his answer and instructions presented the issue of a total failure of consideration, and based his counterclaim for damages and expenses incurred by him in removing the purchased pipes from the machines into which they had been placed, on the fact that they were totally unfit for the purposes intended and were not of the strength and character bargained for, he is not in a position to complain that the court confined the issue to a total failure of consideration.

Appeal from St. Louis City Circuit Court.—*Hon. Horatio D. Wood,* Judge.

AFFIRMED.

*S. T. G. Smith* and *Thomas S. Meng* for appellant.

(1) A petition based on an unmatured demand does not state a cause of action. Heard v. Ritchey, 112 Mo. 519; Mason v. Barnard, 36 Mo. 391; Brown v. Shock, 27 Mo. App. 355; Duryee v. Turner, 20 Mo. App. 36; Boatmen's Sav. Bk. v. McMenany, 35 Mo. App. 198, 206. "The objection that the petition fails to state facts sufficient to constitute a cause of action, is never waived. Such defect in the petition is not cured by verdict or judgment." Brown v. Shock, supra; Mason v. Barnard, supra; Heard v. Ritchey, supra. (2) While suit may be instituted by attachment on an unmatured

demand, if the attachment fails, the suit cannot be maintained. Grier v. Fox, 4 Mo. App. 522; Aultman v. Daggs, 50 Mo. App. 289; Knapp v. Joy, 9 Mo. App. 575; Duryee v. Turner, 20 Mo. App. 34; Peery v. Harper, 42 Mo. 132. (3) Under a plea of total failure of consideration, a partial failure may be shown, and the amount of the recovery reduced. Gamache v. Grimm, 23 Mo. 38; Brown v. Weldon, 99 Mo. 569. (4) Where goods are sold to be used for a particular purpose, there is an implied warranty of fitness for such use. Comingo v. Leedy, 114 Mo. 478; Armstrong v. Tobacco Co., 41 Mo. App. 259; Lee v. Saddlery Co., 38 Mo. App. 206; Creasey v. Gray, 88 Mo. App. 459; Bierman v. City Mills Co., 151 N. Y. 490; Kellogg Bridge Co. v. Hamilton, 110 U. S. 108; Dushane v. Benedict, 120 U. S. 636; Morse v. Union Stock Yds. Co., 21 Ore. 289. (5) Where goods are not of the kind or quality contracted for, or are unfit for the purpose for which they were sold, it is not necessary to return, or offer to return the goods, in order to defend against an action for the purchase price on the ground of total or partial failure of consideration. Murphy v. Gay, 37 Mo. 537; Compton v. Parsons, 76 Mo. 457; Brown v. Weldon, 99 Mo. 568. (6) A record or writing may be used to refresh the recollection of a witness, even though the writing was not made by him, and though it is not an original entry contemporaneously made. Greenleaf on Evidence (Lewis 1896 Ed.), secs. 436, 438.

*Rowell & Ferriss, Joseph H. Zumbalen* and *Joseph S. Laurie* for respondent:

(1) The fact that some of the obligations in suit were not due at the institution of this suit presents no obstacle to plaintiff's recovery thereon. Wag. Stat., p. 181, sec. 2; p. 189, sec. 42; p. 191, sec. 49. Section 2 of Wagner's Statutes, above quoted, has remained unchanged, and is now section 367, Revised Statutes

1899. Section 49, above quoted, has not been changed and is now section 414, Revised Statutes 1899. Section 42, above quoted, was amended in 1891, and is now section 407, Revised Statutes 1899. Assuming, for the present, that the case of Grier v. Fox, 4 Mo. App. 522, was correctly decided under the statutes then in force, we submit that the change made in the statute in 1891 must necessarily lead to a different result in this case. In view of the statutory provisions above referred to, which were not considered by the Court of Appeals, the case of Grier v. Fox was incorrectly decided. Knapp-Stout & Co. v. Joy, 9 Mo. App. 575, and Duryee v. Turner, 20 Mo. App. 34, arose under the same statute as Grier v. Fox, and simply followed that case without re-examination of the question involved, and hence need not be further noticed. Aultman Co. v. Daggs, 50 Mo. App. 288, arose before the amendment of 1891. The fallacy of that case lies in the conclusion. This court has repeatedly held that "jurisdiction of the subject-matter is the power to hear and, determine cases of the general class to which the proceeding in question belongs." State ex rel. v. Elkins, 130 Mo. 90; Hope v. Blair, 105 Mo. 85; Leonard v. Sparks, 117 Mo. 103. A judgment in a suit on an obligation before its maturity is voidable only, and not subject to collateral attack. Robertson v. Huffman, 92 Ind. 247; Mikeska v. Blum, 63 Texas 44; Cornwell v. Hungate, 1 Ind. 156; Bush v. Hausen, 70 Ill. 480; Winningham v. Trueblood, 149 Mo. 572; State ex rel. v. Scarritt, 128 Mo. 399. (2) The defense set up in the answer has wholly failed. (3) Appellant contends that, under a plea of the total failure of consideration, it is permissible to show partial failure as a defense *pro tanto*. We do not agree to this. The statute (R. S. 1899, sec. 645), provides that in a suit upon a writing for the payment of money the defendant "may prove the want or failure of considera-

tion, in whole or in part." This means, of course, when either of such defenses are pleaded, so that the meaning of the statute is the same as if it read may plead the want or failure of the consideration in whole or in part. Such defenses, we submit, are separate and distinct, and are required to be so pleaded. Under a plea of want of consideration defendant would not be entitled to show a failure of consideration, because said defenses rest on entirely different grounds; and upon the same principle, we submit that under a plea of a total failure of consideration because the property sold for a particular purpose proved wholly worthless, defendant should not be allowed to abandon such defense and show that the same was defective in certain particulars and therefore worth less than the contract price. Crenshaw v. Looker, 185 Mo. 375; Belden v. Church, 23 Ill. App. 473; Swain v. Cawood, 3 Ill. 505; Wadhams v. Swan, 109 Ill. 46.

FOX, J.—The record before us in this cause discloses that this is an old case. The cause is now here upon appeal by the defendant from a judgment of the circuit court of the city of St. Louis. This action was instituted on October 25, 1890. The petition states in separate counts five causes of action. The first was upon a bill of exchange for $1,750, duly accepted by the defendant. The second was upon an account for goods sold and delivered for $58.59. The third was upon a bill of exchange for $448.98. The fourth was upon a promissory note for the sum of $1,969. The fifth was upon a bill of exchange for the sum of $700. At the time of the institution of this suit, in aid of it an attachment was simultaneously issued and under it certain property of the appellant was levied upon and held by the sheriff. The appellant filed a plea in abatement to the attachment, which was tried in February, 1891, resulting in a verdict for the defendant. The re-

spondent appealed to this court from the judgment under that verdict and the case was reversed by this court in an opinion which will be found in 118 Mo. 365. The mandate reversing the cause was filed in the circuit court December 31, 1893. On December 13, 1897, on motion of plaintiff, judgment was entered for defendant on the plea in abatement and the cause was ordered continued for hearing on the merits. On January 13, 1902, the record discloses that F. K. Ryan, who was attorney for the defendant, withdrew from the case, and the present counsel, Messrs. Thomas S. Meng and S. T. G. Smith, entered their appearance.

On April 11, 1902, defendant filed its amended answer to each of the counts embraced in the petition. The answers to all of the five counts are substantially the same, and in them defendant admits the execution of the note and bills of exchange, as alleged in the first, third, fourth and fifth counts of the petition, as well as the purchase of the goods, wares and merchandise as set out in the second count of said petition. Then follows in each of such answers a plea of total failure of consideration.

"And for a counterclaim and cause of action against the plaintiff, defendant says that on or about January, 1890, to December, 1890, defendant purchased of plaintiff large quantities of pipe and fittings; that plaintiff knew that said pipe and fittings was furnished and purchased for a particular purpose, to-wit, use in the manufacture of ice machines, and plaintiff knew that said pipe and fittings was required to be of a certain strength and character and plaintiff agreed to furnish pipe and fittings of that strength and character; that plaintiff furnished a large amount of pipe and fittings, but not of the strength and character required for said ice machines, which it had agreed to furnish; that the defects in such pipe and fittings were of such a character as not to be ascertainable by an examination of

said pipe and fittings and could only be determined after said pipe and fittings had been built into said ice machines for which they were bought; that the defendant built the pipe and fittings furnished by plaintiff into various ice machines in various parts of the country; that the cost of the labor of placing said pipes and fittings in said machines was very great; that after said pipes and fittings were built into said ice machines, the pressure necessary in the operation of ice machines, and which pressure plaintiff agreed said pipe and fittings would stand, was put into the said pipe and fittings, but said pipe and fittings by reason of their defective condition would not stand the pressure, and split and broke, thus rendering it necessary to take the said ice machine to pieces and to replace said pipes and fittings with pipe and fittings of the strength and character necessary in ice machines and which was the kind of pipe and fittings plaintiff agreed to furnish to defendant. That the cost of taking said pipe and fittings out of said ice machines and replacing the new pipe and fittings was very great, to-wit, $7,000; that defendant demanded of plaintiff payment of said damages on or about the 1st day of June, 1890.

"Defendant says that by reason of the premises it has been damaged in the said sum of $7,000, for which sum it prays judgment, with interest from the date of demand and costs."

To which answer the plaintiff filed the following reply:

"Now comes the plaintiff in the above-entitled cause and by leave of court files this its amended reply and answer to the defendant's amended answer and counterclaim therein; and for such reply to the first, second, third, fourth and fifth paragraphs of said amended answer, plaintiff denies each and every allegation of new matter therein contained; and further replying to said first, second, third, fourth and fifth

paragraphs of said amended answer, plaintiff states that prior to the institution of this suit the defendant asserted a claim against the plaintiff for an alleged partial failure of consideration of the acceptance, note and account sued on in plaintiff's petition, claiming that some of the material and merchandise for which said acceptances and note were given and said account was contracted, to-wit, some of the fittings, were defective and imperfect; that on September 12, 1890, and before the institution of this suit, plaintiff and defendant adjusted and settled said alleged claim and all claims defendant had against the plaintiff by reason of any of said material being defective or imperfect; that on said date, plaintiff paid to defendant and defendant accepted the sum of $531 in full satisfaction, settlement and discharge of all and any alleged claim the defendant had against the plaintiff in consequence of any defects in the materials furnished by plaintiff to defendant.

"And for answer to defendant's counterclaim, plaintiff denies each and every allegation thereof; and further answering plaintiff states that prior to the institution of this suit, the defendant asserted a claim against the plaintiff for an alleged partial failure of consideration of the acceptances, note and account sued on in plaintiff's petition, claiming that some of the material and merchandise for which said acceptances and note were given and said account was contracted, to-wit, some of the fittings, were defective and imperfect; that on September 12, 1890, and before the institution of this suit, plaintiff and defendant adjusted and settled said alleged claim and all claims defendant had against the plaintiff by reason of any of said material being defective or imperfect; that on said date plaintiff paid to defendant and defendant accepted the sum of $531 in full satisfaction, settlement and discharge of all and any alleged claims the defendant had against

the plaintiff in consequence of any defect in the materials furnished by plaintiff to defendant.''

On February 10 and 11, 1903, said cause was tried by a jury. At the commencement of the trial on February 10, 1903, the appellant claimed the right to the opening and closing of the case on the ground that the burden was upon it to establish its defense. The record discloses the following admissions:

"Be it remembered: That on the 10th day of February, A. D. 1903, the above-entitled cause came on for trial before Hon. Horatio D. Wood, Judge, and a jury, in Room No. 3 of said court, Messrs. Clinton Rowell, J. H. Zumbalen, Seneca S. and S. C. Taylor appearing for plaintiff, Messrs. S. T. G. Smith and Thomas S. Meng appearing for defendant, and the following proceedings were had therein, to-wit:

"The Court: The only question in this case is on the counterclaim, and if you can try that first, I think you better do so. The burden of proof, then, is on the defendant, I presume.

"Mr. Smith: Yes, sir.

"Mr. Rowell: I understand you admit our notes and account to be due?

"Mr. Smith: We admit that.

"The Court: If the plaintiff has to show anything to establish its claim, it has the opening and closing.

"Mr. Smith: I understand. We gave the notes and acceptances, and if there is any account, we are liable for it. That is the situation.

"Mr. Rowell: The notes have been given and have not been paid?

"Mr. Smith: Have not been paid.

"Mr. Rowell: The same as to the account?

"Mr. Smith: The same as to the account. That is the way I understand the situation.

"Mr. Taylor: Then it is understood and agreed, that the plaintiff is entitled to recover the full amount

claimed on each of its causes of action with interest, unless the defendant shall establish to the satisfaction of the jury that the consideration for the notes, acceptances and account failed?

"Mr. Smith: Yes, that is right."

We have read in detail the evidence as disclosed in the abstract of record. It is very voluminous and we shall not undertake to set out the testimony introduced by either the defendant or the plaintiff in detail. A mere reference as to the tendency of the testimony to establish certain facts will be sufficient to enable the court to determine the legal propositions involved in this proceeding.

The evidence in this case tended to show that from December, 1889, to September, 1890, the defendant purchased from plaintiff large quantities of extra strong wrought iron pipe of various sizes and that the plaintiff had a quantity of malleable iron fittings, called four and one-half-inch return-bends, manufactured according to sample or drawing furnished for defendant. The defendant was at the time engaged in the business of erecting and installing ice making machines and had contracts for the erection of such plants in Georgia and South Carolina, and had bought said material for use in the installation of said ice making plants. It was also erecting an ice plant in St. Louis and all of said pipe used in the construction of said plant was purchased from said plaintiff. The total amount of defendant's purchases from plaintiff was $23,355, of which $839.40 was return-bends and the rest pipe. Of this total defendant had paid about $19,000, and the obligation sued on represented the balance. Each month's purchases were settled at the end of the month by sixty-day acceptances, and as these matured partial payments were made upon them and new acceptances or notes given for the balance.

The defendant's evidence tended to show that the

goods were sold with an express warranty that they were fit for use in the construction of ice making plants and would stand a minimum pressure of 300 pounds to the square inch, while the plaintiff's evidence tended to show that there was no such warranty, and that the material was furnished by its commercial description of extra strong wrought iron pipe and was ordered from printed lists. The evidence of John Ring, defendant's president, and of other employees of defendant, tended to show that all of the return-bends were wholly worthless for use in ice making machinery, and that some of the pipe opened up at the weld when pressure was applied and that by reason of such defects defendant was obliged to incur large additional expense in the construction of plants, in taking out and replacing broken pipe.

Plaintiff introduced numerous witnesses who were familiar with the pipe purchased by the defendant, and who had either noticed the same during the erection of the various plants, or examined the plants after they were erected, and their testimony tended to prove that there was nowhere any trouble with the pipe, and that it was the best quality of extra strong pipe and suitable for use in ice making plants, and in fact some of them testified that it was heavier and better pipe than is ordinarily used for such purposes.

There was other testimony tending to show that in June, 1890, defendant's president made complaint to plaintiff that the return-bends furnished by plaintiff proved defective and unfit for ice making plants, and that defendant had abandoned the use of them and had a large lot of unused bends on hand and asked that it be given credit for the unused bends.

There was proof tending to show that the president, Mr. Ring, was directed to return such defective bends to plaintiff, and that he returned about 885 and was given a check for $531, the sum at which they were

billed. Upon this question Mr. Ring testified that early in June, on his return to St. Louis, he called upon Mr. Worcester and told him that all of the return-bends were so uniformly bad that he had abandoned any effort to use them, and had incurred expenses in replacing them with others, which delayed the company's work very materially, and that the pipe was so much of it bad that the company had also lost its time for deliveries on it and had expended large amounts of money on it, and that it was going to have large claims for non-fulfillment of contract in consequence of bad pipe and fittings, and that it would have to look to plaintiff to reimburse it. He further testified that Mr. Worcester stated that they would do what was right in the matter and that if he would have the unused bends sent back they would credit the company with the amount they had charged it with for them. Mr. Ring said they did so and that they gave his company credit for them for five hundred and thirty-odd dollars.

The cause was submitted to the jury on the following instructions:

"1. If the jury believe from the evidence, that the tubing furnished by plaintiff to the defendant possessed a commercial value, and that the defendant received the same and used it, then it is the duty of the jury to return a verdict in favor of plaintiff upon its several causes of action for the amount of the principal sued on each cause of action, together with interest at the rate of six per cent per annum from the date of the maturity of the acceptances and note and account upon which this suit is based, and this irrespective of what the jury may regard it their duty to do as to defendant's counterclaim.

"1a. If the jury find for the plaintiff on the first cause of action stated in the petition, they will assess its damages at the sum of $1,750 with interest at the

rate of six per cent per annum from the 20th of October, 1890, up to the present time.

"If the jury find in favor of the plaintiff upon the second cause of action, they will assess its damages in the sum of $58.59 with six per cent interest from the date of filing of this suit, to-wit: October 25, 1890, up to the present time.

"If the jury find in favor of the plaintiff on the third cause of action, they will assess its damages in the sum of $448.98 with six per cent interest from November 1, 1890, up to the present time.

"If the jury find in favor of plaintiff on its fourth cause of action, they will assess the damages in the sum of $1,969, with six per cent interest from the 6th day of November, 1890, up to the present time.

"If the jury find in favor of the plaintiff on its fourth cause of action, they will assess its damages in the sum of $700 with six per cent interest from the 18th day of December, 1890, up to the present time.

"2.    In this case the defendant files a counterclaim, for damages growing out of an alleged breach of warranty, alleged to have been entered into with the plaintiff, and as to this counterclaim the court instructs you as follows:

"If you find and believe from the evidence that at the time or the purchase of the pipe and fittings in controversy the plaintiff knew that said pipe and fittings were purchased to be used in the manufacture of certain ice machines and were required to be of a certain strength and character, and the plaintiff agreed with the defendant to furnish pipe and fittings of that strength and character, and if you find from the evidence that the plaintiff failed to furnish pipe and fittings of the strength and character ordinarily used in the manufacture of ice machines, then you will find for the defendant.

"The court instructs you that the burden of proof

is upon the defendant to show by a preponderance of the testimony, that is to say, by evidence which you deem more credible and of greater weight than that offered by the plaintiff, that it agreed to furnish pipe and fittings of the strength and character ordinarily required in the manufacture of ice machines, and also that it failed to furnish pipe and fittings of such strength and quality as are ordinarily used in the manufacture of ice machines, and that it was damaged thereby, and unless you believe that the defendant has established these facts by a preponderance of the testimony you will find for the plaintiff upon defendant's counterclaim.

"3. If, on the other hand, you believe that defendant ordered from plaintiff the pipe and fittings in controversy, and that said articles were of a kind and description known to the trade and to manufacturers, and if you believe from the evidence that the only agreement between the parties was that the plaintiff agreed to sell and the defendant agreed to buy of the plaintiff from 50,000 to 75,000 feet of extra strong one-inch pipe, then the court instructs you, as a matter of law, that there was no warranty that the pipe furnished would answer the purpose for which it was purchased by the defendant, although you may believe from the evidence that the plaintiff knew the purpose for which the pipe was to be used, and defendant is not entitled to recover on account of any defective pipe shipped under such an agreement.

"4. The court instructs the jury that it is admitted by the pleadings that the acceptances, note and account described in plaintiff's petition are due and owing to the plaintiff by the defendant, unless the jury find from the evidence that there was a total failure of the consideration of said acceptances, note and account or some one or more of them and the burden of proving such a failure of consideration, that is, that the materi-

als for which the acceptances, note and account were given or made were wholly worthless, is upon the defendant.

"5. If you find for the defendant upon its counterclaim you will assess its damages at such reasonable sum as you may find that defendant was compelled to expend in removing and replacing such defective pipe and fittings.

"6. The court instructs the jury that the defendant cannot recover upon its counterclaim in reference to time and labor expended in using or replacing the pipe or fittings furnished by plaintiff unless the defendant has proven to your satisfaction by a preponderance of evidence, that said pipe or fittings were not reasonably fit for the purpose for which they were sold to the defendant, and that the defendant was damaged thereby.

"7. The jury are instructed that they are the sole judges of the credibility of the witnesses and of the weight to be given to their testimony. In determining such credibility and weight they will take into consideration the character of the witness, his manner on the stand, his interest, if any, in the result of the trial, his relation to or feeling towards the parties to the suit, the probability or improbability of his statements, as well as the facts and circumstances given in evidence. In this connection you are further instructed that if you believe that any witness has knowingly sworn falsely to any material fact, you are at liberty to reject all or any portion of such witness's testimony.

"9. If the jury believe from the evidence that the defendant asserted a claim for damages growing out of the furnishing of defective return-bends, and that a settlement of such damages was had prior to the bringing of this suit, the defendant cannot recover on its counterclaim, for any damages growing out of the furnishing of such bends."

To the action of the court in giving each and all of said instructions defendant then and there duly excepted.

Defendant requested the court to give ten instructions, which were refused by the court. We deem it unnecessary to reproduce the instructions refused, but will refer to them and give them such attention as they merit and demand during the course of the opinion.

The cause being submitted to the jury they returned a verdict finding the issues in favor of the plaintiff upon all of the counts in the petition, the amount of damages assessed upon each count aggregating the sum of $8,555.25, and also made a finding of the issues in favor of the plaintiff upon the counterclaim filed by the defendant. Motions for new trial and in arrest of judgment were timely filed and by the court overruled. Judgment was entered in favor of the plaintiff in accordance with the verdict of the jury and from this judgment the defendant prosecuted its appeal and the record is now before us for consideration.

### OPINION.

The record in this cause discloses numerous complaints of error which are now urged as grounds for the reversal of this judgment. We will give to the assignments of error such attention as their importance merit. It is manifest from the record before us that the most serious question with which we are confronted is the action of the court in refusing instructions numbered 1, 2 and 3, which were requested by the defendant and in effect told the jury that the acceptance and note which formed the basis of the causes of action in the third, fourth and fifth counts of the petition not being due at the time the suit was brought the verdict should be in favor of the defendant on said causes of action. The two opposing contentions of appellant and respondent upon this proposition may thus be briefly

stated: Appellant insists that, the issue upon the plea in abatement interposed in this proceeding having resulted in favor of the defendant, thereby operating a dissolution of the attachment, this ended the case, and there could be no trial upon the merits of the causes of action embraced in those counts for unmatured claims. On the other hand, the respondent contends that, under the provisions of the statutes now in force and which were in force at the time of the trial of this cause, after the abatement of the attachment proceeding the trial should then proceed to final judgment upon the merits of the causes of action alleged in the counts to which reference has heretofore been made. The insistence of the appellant is predicated upon the provisions of the statute as construed by the St. Louis Court of Appeals in the case of Grier v. Fox, 4 Mo. App. 522, which was decided in 1877, and which was subsequently followed by the same court in numerous other cases.

In Grier v. Fox the Court of Appeals ruled under the provisions of the statute in force at that time that, in attachment proceedings upon demands not yet due, upon a finding of the issues upon the plea in abatement for the defendant, the action upon such unmatured claims should be dismissed. The learned and esteemed judge rendering the opinion in that case thus stated the rule: "The record presents only one question for determination: Whether, where a suit is commenced by attachment on a claim not due, the suit should be dismissed if the issue on the plea in abatement is found for defendant. The statute provides that an attachment may, in certain cases, issue on a demand not yet due, but that no judgment against defendant shall be rendered until the maturity of the demand. If the issue on the plea in abatement be found for defendant, the attachment shall be abated, 'but the suit shall proceed to final judgment on the cause of action therein alleged, as though commenced originally by summons

alone.' [Wagner's Statutes, 178, secs. 2, 42 and 49.] Under the law as it formerly stood, where the plea in abatement was found for defendant the whole proceeding was at an end, and plaintiff must commence a new action. Now, the plea in abatement being disposed of, the suit may proceed, but as if commenced by summons alone. If a suit were commenced by summons issued upon a petition which set out no cause of action, judgment upon demurrer must necessarily be for defendant. The question would not be whether the note or other demand sued on was due at the time of joinder in demurrer, but whether it was due at the time of the filing of, the petition. . . . The issue raised by the plea in abatement being out of the way in the case before us, and the case standing as any action commenced by summons, we see no reason why it should not be subjected to the ordinary rules governing such actions; nor why the plaintiff should be allowed any advantage because he was sworn, no matter how conscientiously, to his belief in the existence of a state of facts which is found not to have existed.''

In the case of Aultman & Co. v. Daggs, 50 Mo. App. 280, the case of Grier v. Fox is not referred to; however, it is apparent that the court without a reconsideration of the proposition assumed that the case of Grier v. Fox correctly stated the rule. Biggs, J., in speaking for the court, said: ''It is undoubtedly the law that a suit by attachment, which is based on a claim not due, must be dismissed when the issue on the plea in abatement is found for the defendant. No authorities need be cited in support of this proposition. The right to institute such a suit depends solely on the right to attach, and, when the right to attach is finally decided not to exist, the jurisdiction of the court as to the subject-matter of the, suit necessarily ceases. The trial judge in the case at bar proceeded upon this idea,

that is, that there was a total want of jurisdiction, after the plaintiff had failed to appeal from the judgment dissolving the attachment, and, therefore, the court could only dismiss the cause. If the court was right in its conclusion as to the nature of the plaintiff's action, that is, that the suit was based upon an unmatured demand, then the action of the court on the motion to dismiss, standing by itself, was right.''

The sections of the statute applicable to this proposition in force at the time of the decision in Grier v. Fox, were as follows: Wagner's Statutes, page 181, section 2, provides that an attachment may issue on a demand not yet due, except in certain cases, but that no judgment shall be rendered against the defendant until the maturity of the demand. Section 42, Wagner's Statutes, page 189, provides: ''Upon such issue the plaintiff shall be held to prove the existence of the facts alleged by him as the ground of the attachment, and if the issue be found for him the cause shall proceed; but if it be found for the defendant, the attachment shall be abated at the cost of the plaintiff, and he and his securities shall be liable on their bond for all damages occasioned by the attachment; but the suit shall proceed to final judgment on the cause of action therein alleged, as though commenced originally by summons alone.'' Wagner's Statutes, page 191, section 49, provides: ''When any attachment shall be dissolved, all proceedings touching the property and effects attached, and the garnishee summoned, shall be vacated, and the suit proceed as if it had been commenced by summons only.''

Section 2 of Wagner's Statutes, above quoted, has remained unchanged, and is now section 367, Revised Statutes 1899. Section 49, above quoted, has not been changed, and is now section 414, Revised Statutes 1899. Section 42, above quoted, was amended in 1891, and is now section 407, Revised Statutes 1899, and

reads as follows: "Upon such issue the plaintiff shall
be held to prove the existence of the facts alleged by
him as the ground of the attachment, and if the issue be
found for him, and the court denies defendant a new
trial of said issue, judgment shall be rendered against
defendant, sustaining the attachment, and for the costs
of the attachment proceedings, and the defendant may
file his bill of exceptions as upon any other matter in
the proceedings, and answering to the merits shall not
be a waiver of such exceptions, and the cause shall pro-
ceed to trial upon the merits; and if upon the trial of
such issue the finding be for the defendant, and the
court denies plaintiff a new trial of such issue, the
court shall thereupon render judgment that the attach-
ment be abated at the cost of the plaintiff and his sure-
ties, and thereupon the plaintiff may file his bill of ex-
ceptions as upon any other matter in the proceedings,
and the cause shall proceed to trial on the merits, and
the filing of his bill of exceptions by plaintiff shall pre-
serve the attachment in full force. Upon the trial of
the case upon the merits, either party may appeal —
the plaintiff from the finding on the plea in abatement,
or on the merits, as he may elect, or both; the defend-
ant, if at all, on the whole case — either party giving
such bond for that purpose as the court may require;
and any such appeal shall operate as a supersedeas of
the judgment or judgments appealed from, and, if by
the plaintiff, shall preserve the attachment in full force
until the final determination of such appeal in the ap-
pellate court, or of the case upon a re-trial in the trial
court. If the plaintiff, in case the judgment or find-
ings be against him, fails to appeal therefrom, or if
such appeal be dismissed, or if upon an appeal such
judgments or findings be affirmed, he and his sureties
shall be liable on their bond for all damages and costs
occasioned by the attachment or any subsequent pro-

201 Sup—4

ceedings connected therewith. Provided, that such appeals shall be taken and perfected as in ordinary civil actions.''

This solution of this proposition must be sought by a reasonable and fair construction of the sections of the statute governing and controlling proceedings by attachment.

Section 367, Revised Statutes 1899, with certain exceptions, provides for the issuing of attachments on claims not yet due. Section 370 points out expressly the method of instituting an attachment proceeding, in the circuit court, which provides for filing in the clerk's office of the court in which the attachment is instituted, a petition or statement of the cause of action, and also provides for the filing of affidavit and bond. It is clear that the petition or statement of the cause of action as provided by this section is applicable to suits instituted on demands not yet due. In other words, upon a claim not yet due you state the facts constituting your cause of action in the same manner as you would if the claim or demand was due at the time of the institution of the suit. Section 388 provides that the writ or petition shall be served upon defendant as an ordinary summons. Section 407, as heretofore indicated, expressly provides that if upon the trial of the issue presented by the plea in abatement that issue be found for the defendant the cause shall proceed to to trial upon the merits. This statute must be treated as applicable to attachment proceedings upon demands not due as well as to those that are due and payable at the time of the institution of the suit.

Leaving out of view for the present the provisions of section 42, Wagner's Statutes, page 189, which was in force at the time of the decision by the St. Louis Court of Appeals in Grier v. Fox, after a most careful consideration of the provisions of section 407, Revised Statutes 1899, in force at the time of the trial of

this cause, we are convinced that the provisions of that section are not susceptible of the construction contended for by appellant, that is, the finding of the issue in the plea in abatement for the defendant in a proceeding where the demand was not due at the time of the institution of the suit, must result in the dismissal of the cause upon its merits. It may be argued that the rule as announced in Grier v. Fox is applicable to the provisions of the statute as it now exists, and that causes only proceed to trial upon the merits in cases where the demand was not due at the institution of the suit where the plaintiff preserves the attachment in full force by filing a bill of exceptions upon the finding of the issue in the plea in abatement for the defendant. A careful analysis of the provisions of the section will demonstrate that such argument is unsound. In the first place, upon the trial of the issue presented by the plea in abatement and a finding for the defendant upon that issue, the plaintiff may or may not file his bill of exceptions. The statute simply provides that he may file such bill of exceptions, and it is clear from other provisions in the section that the filing of a bill of exceptions by the plaintiff upon the finding of the issues in the plea in abatement against him is not a condition precedent to the right of the plaintiff to have the cause proceed to trial upon the merits after maturity of his demand in conformity to the statute. This is made clear by other provisions in this section which provides that "upon the trial of the cause upon the merits, either party may appeal—the plaintiff from the finding of the plea in abatement, or on the merits, as he may elect."

This statute must be treated as applicable to all suits instituted by attachment, whether the claim or demand is due or not at the time of the institution of the suit, and it is manifest that in attachment suits upon demands not yet due, where the cause proceeds to trial upon its merits after the maturity of the demand and a

judgment is rendered against the plaintiff, if the contention of the appellant in this cause is to be maintained, an appeal from such judgment by the plaintiff without appealing from the finding of the issue upon the plea in abatement, would be a meaningless and useless procedure.  If the proceeding upon its merits must be dismissed upon the dissolution of the attachment, it would logically follow that an abandonment of the right to appeal from the action of the trial court upon the judgment in the plea in abatement would leave the plaintiff, according to the insistence of the appellant, without any standing in the appellate court upon the merits of the action, for the reason as claimed by appellant that, in causes of action instituted before their maturity, there can be no such thing as a final judgment upon the merits in such actions unless the grounds of the attachment have been sustained.  In our opinion such is not a fair and reasonable construction to be placed upon the provisions of the statute governing and controlling the institution of suits by attachment, nor is it in harmony with the manifest intent of the law-making power as indicated when all of the provisions upon the subject are considered together.  The general rule is that, in the institution of all suits, in order to state a good cause of action, the demand or claim upon which the action is based must be due and payable at the commencement of the suit.  For the purpose of preventing creditors who may have just demands against debtors, from being defeated in the collection of such claims, the Legislature enacted section 370, providing for the institution of a suit by attachment, and for the purpose of furnishing additional protection to the creditors in the prosecution of their claims section 367 was enacted, which provided for the issuance of an attachment upon demands not yet due. The petition and the issuance of the writ and the service of it in suits by attachment upon claims not yet

due, are the same as similar suits upon claims that are due and payable at the time of the commencement of the suit. The rights of the debtor under the provisions of the law respecting suits by attachment are fully safeguarded by express provisions of the statute. In the first place, he is fully notified by service of the petition and writ upon him as to the nature of the cause of action upon which plaintiff seeks to predicate his right to recover a judgment when his demand becomes due. In the next place, it is expressly provided "that no judgment shall be rendered against the defendant until the maturity of the demand." Then follow the provisions of section 407, which provide that, after the determination of the issue upon the plea in abatement as to the grounds of attachment, the cause shall proceed to trial upon the merits, and it makes no difference so far as the cause proceeding to trial upon the merits as to whether the issue upon the plea in abatement is determined in favor of the plaintiff or in favor of the defendant; there is an entire absence of any terms in the statute which would indicate that, where the issue upon the plea in abatement was determined in favor of the defendant, such determination of that issue terminates the entire proceeding, and the cause upon its merits should be dismissed because prematurely instituted. That the Legislature did not intend to make any distinction, so far as proceeding to trial upon the merits in attachment proceedings, between those cases where the suit was instituted upon claims not yet due, and the issue was found on the plea in abatement in favor of the defendant, and suits by attachment upon claims which were due, with a similar finding for the defendant upon the issue presented by the plea in abatement, is indicated by the provisions of section 400, Revised Statutes 1899, in which it is provided that nothing contained in the provisions of the statute "shall be construed to prevent the defendant

from pleading to the merits of any action instituted upon a demand not due, at any time before the maturity thereof." It will be observed that this provision is without qualification. It is not made applicable specially to those defendants where the grounds of the attachment have been sustained, and must be treated as applying to all alike, whether the suit has been sustained or not; and it is manifest that if the law-making power intended, under the provisions of the statute, that upon the finding of the issue in the plea in abatement for the defendants in suits upon claims not yet due, the cause should be dismissed as applicable to such defendants, the provision providing that they might answer to the merits before the maturity of the claim would be meaningless and of no force or vitality, for there would be no necessity for filing an answer to a claim not yet due, if such cause was to be dismissed if the grounds of the attachment failed upon the trial of the issue presented by the plea in abatement.

In arriving at the intention of the lawmakers in the enactment of the provisions of the statute governing and controlling suits by attachment, we should at least take a practical and common-sense view of the remedy sought to be afforded by an attachment proceeding. We find by the provisions of the statute that the rights of creditors and debtors are afforded equal protection. If the creditor seeks to enforce his claim by attachment, he must file his petition stating the cause of action (whether it be upon a claim that is due or not due); his affidavit alleging the grounds for attachment; he must give a good and sufficient bond for all damages that may accrue to the defendant by reason of the attachment; service of a copy of the petition and writ must be had upon the defendant. Then follows an express provision of the statute that "no judgment can be rendered against the defendant upon the merits of the cause of action until it becomes due." Doubtless the

lawmakers took a practical and common-sense view of this sort of a proceeding, and having provided that there could be no rendition of a final judgment upon the merits until the claim against the defendant became due; therefore, the defendant having full notice of the claim, there was no necessity or reason for providing that in suits by attachment upon claims not yet due, and upon the finding of the issue upon the plea in abatement for the defendant, the cause upon its merits should be dismissed and the plaintiff required to institute a new suit upon such claim; hence this statute should be treated as being general in its application, applicable to both classes of cases in suits by attachment, where the claim is not due, as well as those upon demands due and payable at the commencement of the action. This, in our opinion, is but a fair and reasonable interpretation of the provisions of section 407, which was in force at the time of the trial of this cause; and we have no hesitancy in saying that the change in this statute expressly providing for a trial upon the merits having been made after the decision in the case of Grier v. Fox, supra, and other cases by the St. Louis Court of Appeals, was but a legislative interpretation of the true meaning and intent of the provisions of the statute in force at the time the case of Grier v. Fox was decided.

We are unable to agree with the views expressed by the learned and esteemed judge in the case of Grier v. Fox, where it was in effect held that, in suits instituted by attachment upon any claim or demand not yet due, the determination of the issue upon the plea in abatement in favor of the defendant ended the controversy, and upon motion of the defendant the cause upon its merits should be dismissed. The statute under consideration in that case provided that "an attachment may in certain cases issue on a demand not yet due, but no judgment against the defendant can be rendered

until the maturity of the demand. If the issue on the plea in abatement be found for the defendant, the attachment shall be abated, but the suit shall proceed to final judgment on the cause of action therein alleged, as though commenced originally by summons alone.'' [Wagner's Statutes, 178, sections 2, 42, 49.] In our opinion the final judgment contemplated by the provisions of that statute was such a one as in effect finally ended the controversy. We are unwilling to believe that the Legislature, having provided for full notice by service of the writ of attachment and a copy of the petition, which embraced a statement of the cause of action, contemplated, by the term ''final judgment,'' simply a judgment of dismissal, in cases of the character involved in Grier v. Fox, thereby requiring the institution of a new suit upon the same cause of action between the same parties. The Legislature under the provisions of this statute was dealing with the subject of suits by attachment entirely separate and distinct from the ordinary proceeding by summons. The nature and character of process and the manner of service was fully provided for and the meaning of the terms ''shall proceed to final judgment as though commenced originally by summons alone,'' should not be enlarged by mere construction or interpretation so as to convert the action into one upon the ordinary process of summons. In our opinion a more reasonable construction is that, the parties being all in court, the cause of action being fully set forth in the petition, the defendant having had due service of process, the Legislature intended that the proceeding to final judgment was to be final in fact, and the controversy embraced in the cause of action stated should be finally ended. If it was meant by this provision that, upon the finding of the issue upon the plea in abatement for the defendant in an attachment proceeding upon a claim not yet due, such finding should end the controversy and the cause should

be dismissed, we confess that the law-making power has been very unhappy in the use of language to express such intention.

In the case of Aultman & Co. v. Daggs, supra, the Court of Appeals, speaking through BIGGS, J., in discussing this proposition, proceeded upon the theory that, upon the dissolution of the attachment in a suit upon a demand which was not due, the court necessarily lost jurisdiction as to the subject-matter. In other words, it was ruled that the jurisdiction of the court depended solely on the right to attach, and, when the right to attach is finally decided not to exist, the jurisdiction of the court as to the subject-matter necessarily ceased. We are unable to give our assent to this rule as announced by the learned judge in that case.

The question of jurisdiction has no place in the discussion of this proposition. Suits may and have been instituted upon accounts and promissory notes of the character involved in this proceeding before the maturity of such demands by even the ordinary process of summons, and while there could be no recovery for the reason of a failure to state a cause of action, that is, that it would appear upon the face of the proceeding that the claim was not due, and the right to challenge a recovery for that reason would exist, yet if the process was duly served the court would have jurisdiction of both the person and the subject-matter. While in a case of that character the petition would fail to state a cause of action, it does not necessarily follow that there would be a want of jurisdiction in the court. As was said in State ex rel. v. Scarritt, 128 Mo. l. c. 339, ''The question whether or not the petition states a good cause of action, warranting the affirmative action taken by the court, does not affect the jurisdiction of the court to consider and rule upon the petition, or upon the application of a receiver founded upon it. . . . The distinction between want of jurisdiction and a mere

omission to state a cause of action in a case where jurisdiction exists is plainly marked in our statutory law, as well as in decisions of the Supreme Court.''

In Winningham v. Trueblood, 149 Mo. 572, SHER-wood, J., speaking for this court, in discussing the proposition of a collateral attack upon a judgment for the reason that the petition failed to state a cause of action, thus stated the rule: ''But aside from other considerations already mentioned, it was wholly immaterial whether the petition in McClain's attachment suit against Winningham stated a cause of action or not, because, 'whether a complaint does or does not state a cause of action, is, so far as concerns the question of jurisdiction, of no importance; for, if the complaint states a case belonging to a general class over which the authority of the court extends, there is jurisdiction, and the court has power to decide whether the pleading is good or bad.' [1 Elliott's Gen. Prac., sec. 230; Hunt v. Hunt, 72 N. Y. 217, and other cases cited in the text-book referred to.] In all such cases collateral attack on the judgment rendered is altogether inadmissible. [Vanfleet's Col. Attack, sec. 61, pp. 80, 82, 83; Ib. sec. 236.] So that in this instance it must be held that the judgment was valid, even should it be conceded that the petition stated no cause of action.''

To the same effect is Robertson v. Huffman, 92 Ind. 247, and numerous other cases.

We deem it unnecessary to pursue this subject further. The terms employed in the amended statute of 1891, which was in force at the time of the trial of this cause and is now in force, wherein it is provided that upon the determination upon the issue arising in the plea in abatement the cause shall proceed to final judgment upon its merits, absolutely negatives the right of the court to dismiss the proceeding, for the reason that the claim or demand was not due at the time of the institution of the suit.

This brings us to the consideration of the complaint of appellant that the court erroneously instructed the jury on the part of the plaintiff and refused proper declarations of law requested by the defendant. As we have heretofore stated, this is an old case and should have been settled years ago; however, it is here upon this appeal and must be determined. We have read with a great deal of care in detail, not only the record proper, but as well all of the testimony developed at the trial, and it is manifest that no one can review this record and escape the conclusion that the trial of this cause proceeded upon the theory, as indicated by the answer of the defendant to the numerous counts in the petition, that there was an absolute failure of consideration; in other words, that the machinery, pipe and fittings contracted for by defendant with the plaintiff were absolutely worthless and unfit for the use and purpose for which they were purchased. The learned trial judge fully and fairly submitted the cause to the jury upon that theory.

It is now insisted that the court committed error in the giving of instruction 4, to the effect that, "unless the jury find from the evidence that there was a total failure of consideration of said acceptances, note and account or some one or more of them, and the burden of proving such a failure of consideration, that is, that the materials for which the acceptances, note and account were given or made were wholly worthless, is upon the defendant." It is earnestly urged that this instruction ignores the defense of a partial failure of consideration. It will be observed that the answer in this case pleads a total failure of consideration because the property sold for a particular purpose proved wholly worthless for the uses and purposes for which it was bought. The contention of the respondent upon this

proposition is that the defense of a partial failure of consideration not having been pleaded in the answer the court was warranted in ignoring such defense in declaring the law to the jury upon the facts developed at the trial. We are unable to agree with learned counsel for respondent upon this proposition. Section 645, Revised Statutes 1899, provides that in a suit upon a writing for the payment of money the defendant may prove a want or failure of consideration in whole or in part. It is argued by counsel that this means that this proof may be made when either of such defenses is pleaded, and it is earnestly urged that total and partial failure of consideration are separate and distinct defenses and must be so pleaded in the answer in order to admit of proof of facts upon such defense. The answer in this cause did plead total failure of consideration. We are of the opinion that under a plea of total failure of consideration testimony tending to show a partial failure of consideration is clearly admissible. The answer asserting that there was a total failure of consideration fully informs the plaintiff of the nature and character of the defense and that the consideration of the instrument sued on is attacked and therefore fully informs the plaintiff of what he must come prepared to meet by testimony. We take it that a plaintiff, in his preparation to meet a defense of total failure of consideration, would necessarily seek testimony to cover the entire subject of consideration, whether it be total or partial. Such seems to have been the view entertained by this court in Gamache v. Grimm, 23 Mo. 38. The proceeding in that case was upon a promissory note; the defense was a total failure of consideration. The defendant at the close of the testimony requested an instruction which in effect told the jury that if they found from the evidence that there was a partial failure of consideration they would be authorized in deducting

from the face of the note sued upon the amount of the damages the defendant sustained by reason of such partial failure.  Judge Scott, in speaking for the court on the question presented in that case, thus announced the rule.  He said: "Under the answer set up by the defendants, it was competent for them to show in evidence a partial failure of consideration.  The instruction (numbered 6) given by the court seems to inculcate the idea that, unless there was a total failure of consideration, there must necessarily be a verdict for the plaintiff for the amount of his demand; and that the defendants were not entitled to any deduction by reason of any loss or injury they may have sustained in consequence of the unskillful manner in which the work was executed, unless it turned out that the work to them was totally worthless.  In this we are of the opinion that the court erred.  The pleadings and the evidence warranted the second instruction asked by the defendants, and it should have been given."

However, it does not necessarily follow that this instruction was erroneous  under the facts of this case, or that the court committed error in refusing an instruction on the part of the defendant along the lines of a partial failure of consideration.  This must depend upon the proof introduced in the cause.  Unless there was proof introduced by the defendant tending to show a partial failure of consideration, distinctly applicable to one of the counts contained in the petition, so that the jury may consider such testimony as applicable to such particular count, then the court was warranted in confining the issue to a total failure of consideration and refusing to instruct upon a partial failure of consideration, for the reason there was no testimony upon which to predicate such an instruction.

As before stated, we have carefully read in detail all the testimony in this cause as disclosed by the record,  and  a  careful  analysis  of  it  makes  it  ap-

parent that appellant is claiming deductions from the amounts in some of the counts in the petition that should be asserted and properly embraced in a counterclaim. If there was a partial failure of consideration for the claims sued upon in any of the counts embraced in the petition, it was incumbent upon the defendant to introduce evidence of such failure of consideration and of what such failure consisted. It is not sufficient to authorize the submission of the question of partial failure of consideration to introduce evidence applicable generally to the entire transaction; but it should be made to satisfactorily appear to which of the counts in the petition such testimony is applicable, to the end that the jury might intelligently consider it in connection with such counts.

It will be noted that the testimony of Mr. Ring, the president of the defendant company, shows that $19,000 was paid by defendant to plaintiff upon the purchase of machinery and pipe, and he says that this payment included the payment for certain returnbends, which it is now insisted should have been taken into account upon the question of partial failure of consideration. It will further be observed that the defendant in this cause filed a counterclaim praying for damages in the sum of $7,000, which it was alleged that the defendant suffered by reason of the defective pipe and fittings furnished by plaintiff. An examination of the allegations of such counterclaim will demonstrate that it was predicated upon an alleged warranty upon the part of the plaintiff that the pipe, fittings and machinery sold defendant were of the character required for the use for which they were sold defendant. Upon the issue presented by the counterclaim we find that instructions numbered 2 and 3 properly submitted the issue of the alleged warranty to the jury, and instruction numbered 5 told the jury that if they found in favor of the defendant on such counterclaim they should

assess as its damages the sum which defendant was required to pay in order to remove and replace such defective pipe and fittings. It was alleged in such counterclaim that the plaintiff knew that said pipe and fittings were furnished and used for a particular use, that is to say, to be used in the manufacture of ice machinery, and that said plaintiff knew that said pipe and fittings were required to be of a particular strength and character, and that plaintiff agreed to furnish pipe and fittings of that strength and character; that plaintiff furnished a large amount of pipe and fittings, but not of that strength and character for ice machinery that it agreed to furnish; and it was further alleged that said pipe and fittings, after placing them in position, by reason of their defective condition, would not stand the pressure, and separated and broke, which rendered it necessary to take said ice machinery to pieces and to replace said ice machinery with pipe and fittings of the strength and character necessary in ice machinery, and which was the kind of pipe and fittings that plaintiff agreed to furnish to defendant. It was then alleged that the cost of taking said pipe and fittings out of said ice machinery and replacing the new pipe and fittings was very great, that is, cost $7,000.

The jury, upon a submission of the issues presented by this counterclaim, found in favor of the plaintiff and against the defendant.

A careful analysis of the disclosures of the record makes it manifest that a part of the damages insisted upon by appellant, which is sought to be deducted from the note, acceptances and accounts alleged in the petition in respect to worthless return-bends and so forth, were embraced in the issue submitted upon the counterclaim. Thus it will be seen, as disclosed by the record, that appellant tried the issue upon the numerous counts in the petition, upon the theory that there was a total failure of consideration, and requested the court to de-

clare the law by instruction numbered 4 that if they found that the pipe and fittings were of no value whatever, they would find the issue for the defendant. This instruction was predicated upon the issue as presented by the answer of the defendant. Then we have the defendant presenting the issue in its counterclaim and asking for the recovery of damages by reason of the defective pipe and fittings, which necessitated the removal of them and the replacing of new pipe and fittings, to the damage, as alleged by the defendant, in the sum of $7,000. Upon these disclosures of the record we are of the opinion that defendant is in no position to complain of the instruction numbered 4 given by the court, confining the issue to a total failure of consideration as presented by the answer, nor upon the refusal of the court to instruct the jury upon a partial failure of consideration. The defendant had the cause submitted to the jury upon the theory presented in the answer, and, as herein indicated, requested similar instructions to those given upon that theory. It also had the benefit of the issue presented in the counterclaim, as to the defective and insufficient pipe and fittings, which was fully and fairly presented upon the instructions of the court. As was ruled in the case of Whitmore v. Sup. Lodge Knights & Ladies of Honor, 100 Mo. l. c. 47, "Where a party has asked similar instructions to those given, he is in no position to complain. [Harris v. Hays, 53 Mo. 90; McGonigle v. Dougherty, 71 Mo. 259; Bank v. Hammerslough, 72 Mo. 274; Smith v. Culligan, 74 Mo. 387; Fairbanks v. Long, 91 Mo. 628; Bettes v. Magoon, 85 Mo. 580; Noble v. Blount, 77 Mo. 235; Holmes v. Braidwood, 82 Mo. 610; Reilly v. Railroad, 94 Mo. 600.]"

The appellant having deemed it proper to divide his defenses to this action, that is, first claiming that the consideration of the cause of action sued upon in the petition had totally failed, and for that reason there

could be no recovery upon them; and, secondly, claiming by way of counterclaim that it was damaged in the sum of $7,000 by reason of the defects in the pipe and fittings, which necessitated their removal and the replacing of them, is in no position to complain at the action of the court in the trial and submission of the cause upon the theories presented by such separate and distinct issues presented in the answer.

It is next insisted by appellant that the court erred in the refusal of instruction numbered 9 requested by appellant. This instruction was as follows:

"You are instructed that plaintiff sets up in its reply that all claims of defendant against plaintiff by reason of any of the material sold by plaintiff to defendant being defective, were adjusted and settled prior to the institution of this suit. As to this defense to defendant's counterclaim the burden of proof is upon plaintiff and before you can find for plaintiff on defendant's counterclaim on this ground, you must believe from the preponderance or greater weight of the evidence that such adjustment and settlement were made."

That instruction was properly refused because there was no testimony upon which to predicate it. There was no testimony tending to show a general adjustment of the damages claimed by the defendant in its counterclaim. The only evidence introduced on that subject was to the effect that the claim made by defendant for credit on account of defective return-bends was adjusted and settled, and it will be observed that the court in its instruction numbered 9, which was given to the jury, limited that issue in accordance with the testimony; therefore, there was no error in refusing the instruction in the form as requested by the appellant.

We have carefully read and considered the other instructions requested by appellant, and which were re-

fused by the court, and in our opinion they were properly refused.

We have analyzed the disclosures of the record upon the complaint of improper exclusion of testimony and it is sufficient to say upon such assignment of error that in our opinion the evidence was properly excluded, or at least its exclusion would not warrant the reversal of the judgment in this cause.

We have thus indicated our views upon the main propositions disclosed by the record, and after a careful consideration of all the evidence introduced at the trial, we find it fully supports the conclusion as reached by the jury, and finding no reversible error in the record before us, the judgment of the trial court should be affirmed, and it is so ordered.

All concur.